No. 19-1152

# In the UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

MARK BERRADA,

Plaintiff-Appellant,

v.

GADI COHEN, and
PNY TECHNOLOGIES, INC., a Delaware corporation,

Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Civil Action No. 2:16-cv-00574 (SDW-LDW)

OPENING BRIEF OF PLAINTIFF-APPELLANT MARK BERRARA

Craig A. Rubinstein
Katzman, Wasserman,
  Bennardini & Rubinstein, P.A.
7900 Glades Rd., Suite 140
Boca Raton, FL 33434
Tel: (561) 477-7774
Fax: (561) 477-7447
car@kwblaw.com

Jonathan I. Nirenberg
Rabner Baumgart
  Ben-Asher & Nirenberg, P.C.
52 Upper Montclair Plaza
Upper Montclair, NJ 07043-1391
Tel: (973) 744-4000
Fax: (973) 783-1524
JNirenberg@njemploymentlawfirm.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................iii

JURISDICTIONAL STATEMENT........................................................................ 1

STATEMENT OF ISSUES FOR REVIEW ON APPEAL ..................................... 1

STATEMENT OF RELATED CASES AND PROCEEDINGS............................. 2

STATEMENT OF THE CASE .............................................................................. 2

SUMMARY OF ARGUMENT.............................................................................. 5

LEGAL ARGUMENT .......................................................................................... 6

I.    Standard of Review...................................................................................... 6

     A. Standard of Review of Order Granting Summary Judgment ................... 6

     B. Standard of Review of Motion to Amend Complaint............................... 7

II.   The Court Improperly Granted Summary Judgment as to Count II for
     Breach of the 2013 Contract ....................................................................... 7

     A. A Plaintiff's Own Testimony is Sufficient to Establish a Contract........... 7

     B. On a Summary Judgment Motion the Court Cannot Make Credibility
       Determinations Against the Non-Moving Party ..................................... 13

III. The Economic Loss Rule Does Not Bar Fraudulent Inducement Claims .... 16

IV. An Express Contract Does Not Bar a Quasi Contract Claim Regarding a
     Different Subject Matter ............................................................................ 20

V.   A Contract is Formed if a Party Makes Immaterial Changes to a Contract
     Before Accepting it .................................................................................... 22

VI. The Highly Compensated Employee Exemption to the FLSA Only
     Applies to Individuals Regularly Paid on a Salary Basis ............................ 27

VII. Berrada Should be Permitted to Assert a FLSA Retaliation Claim Because
     Appellees Admitted their Retaliatory Intent................................................ 28

CONCLUSION ............................................................................. 30

CERTIFICATION OF COUNSEL ........................................................ 30

CERTIFICATE OF SERVICE ............................................................. 31

# TABLE OF AUTHORITIES

**Cases**

*Aleynikov v. Goldman Sachs Group, Inc.,*
   765 F.3d 350, 357 (3rd Cir. 2014) ................................................................ 6

*Am. Lumber & Mfg. Co. v. Atl. Mill & Lumber Co.,*
   290 F. 632 (3rd Cir. 1923) ............................................................... 7, 25

*Barry by Ross v. New Jersey State Highway Auth.,*
   245 N.J. Super. 302 (Ch. Div. 1990) ................................................. 17

*Bill Johnson's Rests. v. NLRB,*
   461 U.S. 731, 740 (1983) ................................................................. 29

*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.,*
   226 F. Supp. 2d 557 (D.N.J. 2002) ................................................... 17

*Burlington Northern & Santa Fe Ry v. White,*
   548 U.S. 53 (2006) ............................................................................ 29

*Castrol Inc. v. Pennzoil Co.,*
   987 F.2d 939, 945 (3d Cir. 1993) ..................................................... 20

*Dandana, LLC v. MBC FZ-LLC,*
   507 F.App'x. 264, 269 (3rd Cir. 2012) .............................................. 25

*Darveau v. Detecon, Inc.,*
   515 F.3d 334, 343 (4th Cir. 2008) .................................................... 29

*Geness v. Cox,*
   902 F.3d 344 (3d Cir. 2018) .............................................................. 7

*Gonzalez v. Sec'y of Dep't of Homeland Sec.,*
   678 F.3d 254 (3d Cir. 2012) ........................................................ 9, 10

*Hogan v. Bergen Brunswig Corp.,*
   153 N.J. Super. 37 (App. Div. 1977) .................................................. 7

iii

*Judson v. Peoples Bank & Tr. Co. of Westfield,*
    17 N.J. 67 (1954) .................................................................. 18

*Kirleis v. Dickie, McCamey & Chilcote, P.C.,*
    560 F.3d 156 (3rd Cir. 2009) ............................................... 9

*Liberty Bell Bank v. Rogers,*
    2018 WL 834197 (3rd Cir. 2018) ....................................... 18

*Lo Bosco v. Kure Engineering Ltd.,*
    891 F.Supp. 1020 (D.N.J.1995) .......................................... 18

*Martin v. Gingerbread House, Inc.,*
    977 F.2d 1405, 1406-08 (10th Cir. 1992) .. 29*McBarron v. Kipling Woods, L.L.C.,*
    365 N.J. Super. 114 (App. Div. 2004) ................................... 8

*McConkey v. AON Corp.,*
    354 N.J.Super. 25 (App. Div. 2002) ................................... 17

*McCrone v. Acme Markets,*
    561 F. App'x 169 (3d Cir. 2014) (unpublished) .................. 26

*McGovern v. City of Philadelphia,*
    554 F.3d 114 (3d Cir. 2009) ................................................ 7

*Ocean Cape Hotel Corp. v. Masefield Corp.,*
    63 N.J. Super. 369 (App. Div. 1960) .................................. 18

*Pascarella v. Bruck,*
    190 N.J. Super. 118 (App. Div. 1983) ................................. 7

*Renart v. Chartwells,*
    122 F. App'x 559 (3d Cir. 2004) (unpublished) .................. 26

*RNC Sys., Inc. v. Modern Tech. Grp., Inc.,*
    861 F.Supp.2d 436 (D.N.J. 2012) ...................................... 17

*Shebar v. Sanyo Bus. Sys. Corp.,*
    11 N.J. 276 (1988) ......................................................... 7, 13

*Soto v. Trella*,
  2007 WL 4355463 (D.N.J. Dec. 10, 2007)..........................................12

*United States ex rel. Worthington Pump & Mach. Corp. v. Johnson Contracting Corp.*,
  139 F.2d 274, 277 (3rd Cir. 1943) ....................................................25

*United States v. Philip Morris USA Inc.*,
  566 F.3d 1095 (D.C. Cir. 2009)........................................................18

*United States v. Premises Known as 717 S. Woodward St., Allentown, Pa.*,
  2 F.3d 529 (3rd Cir. 1993) ...............................................................10

*Universal Health Services, Inc. v. United States*,
  136 S. Ct. 1989 (2016)......................................................................25

*Weichert Co. Realtors v. Ryan*,
  128 N.J. 427 (1992) ....................................................................23, 27

*Winslow v. Corp. Express, Inc.*,
  364 N.J. Super. 128 (App. Div. 2003) ..............................................26

## Statutes

28 U.S.C. §1291 .................................................................................1

28 U.S.C. §1331 .................................................................................1

28 U.S.C. §1332 .................................................................................1

28 U.S.C. §1367 .................................................................................1

29 U.S.C. § 215 ................................................................................28

## Regulations

29 C.F.R. § 541.600............................................................................28

29 C.F.R. § 541.601............................................................................28

29 C.F.R. § 541.602............................................................................28

**Other Authorities**

Model Civil Jury Charge 4.10 ................................................................................. 7

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this action pursuant to (a) 28 U.S.C. §1331 with respect to Berrada's claim for a violation of the Fair Labor Standards Act ("FLSA"); (b) 28 U.S.C. §1332(a)(1) based upon the fact that Plaintiff-Appellant Berrada is a citizen of the State of Florida and Appellees are citizens of the State of New Jersey; and (c) 28 U.S.C. §1367(a) with respect to various common law and New Jersey statutory claims.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291. On September 27, 2018, the District Court entered an Order and Opinion granting Appellees' Motion for Summary Judgment as to all claims in Berrada's Amended Complaint. **[A27-A44].** On December 20, 2018, the parties filed a Stipulation of Dismissal with Prejudice of Appellees' Counterclaims, thereby disposing of the remaining claims. **[A44A-A44B].**

On January 17, 2019, after all claims were disposed of and the District Court's Orders became final, Berrada timely filed a Notice of Appeal of the summary judgment Order and a prior Order denying him leave to amend his Complaint to assert a retaliation claim under the FLSA. **[A1-A2].**

## STATEMENT OF ISSUES FOR REVIEW ON APPEAL

There are three primary issues to be reviewed on this appeal:

1. Did the District Court improperly weigh the evidence, evaluate credibility,

and make findings of fact in granting Appellees' Motion for Summary Judgment?

2. Does a party seeking to enforce an oral contract need additional direct evidence corroborating the contract, or can a party establish an oral contract through his own sworn testimony?

3. Did the District Court improperly prohibit Berrada from amending his Complaint to include a retaliation claim under the FLSA despite Appellees admitting they asserted their counterclaims because Berrada filed this lawsuit?

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously, and there are no related cases or proceedings (pending or potential).

## STATEMENT OF THE CASE

Appellees PNY and Gadi Cohen courted Berrada to rescue their fledgling and faltering accessories line of business, including the PowerPack battery product. **[A2956(¶2); A1203(ln.10-14); A2486-A2489(#5); A1536(ln.16)–A1537(ln.3); A1538(ln.21)–A1540(ln.24); A1546(ln.10-15); A1554(ln.1-7); A1491(ln.8-15)].** On September 18, 2013, Berrada and Appellees entered into an oral contract pursuant to which Berrada would manage, source, develop, design, market and sell accessories, and Appellees would pay Berrada $15,000 per month for one year, plus 5% on sales and 25% on profit from the sale of accessories, which Berrada would continue to receive as long as PNY continued to sell the new and existing products

managed, sourced, developed, designed, marketed and/or sold by Berrada or under his leadership (the "2013 Contract"). **[A2956(¶2); A1216(ln.18)-A1218(ln.8); A1223(ln.8-22); A1296(ln.12)-A1297(ln.14); A2486-A2489(#5)].** In entering into this 2013 Contract, Berrada walked away from his own new business opportunity through which he believed he had the potential to earn millions of dollars. **[A1201 (ln.17-24); A1204(ln.21)–A1207(ln.5); A2476-A2480; A2481-A2483; A2500-A2506; A2507-A2509; A3373-A3408; A2486-A2489(#5)].**

In a span of less than 18 months, Berrada was able to use his vast experience and expertise to lead a team of PNY employees to increase the sales of PowerPacks from less than $500,000 to more than $17.7 million, a more than more **35 fold** increase. **[A1536(ln.16)–A1537(ln.3); A1538(ln.21)–A1540(ln.24); A1546(ln.10-15); A1554(ln.1-7); A1491(ln.8-15); A3178(ln.10-13); A3181(ln.4-9); A3183 (ln.13)-A3184(ln.10); A3204(ln.15-18); A3209(ln.23)–A3210(ln.10); A3222 (ln.16-23); A3252(ln.22)–A3253(ln.22); A3270(ln.24)-A3272(ln.4); A3434-A3494].** After Berrada accomplished this herculean task, Appellees failed to pay him the percentage payments, which were a function of sales and profits, to which he was entitled under the applicable contract. **[A2494(#15); A1216(ln.21)-A1217 (ln.15)].**

On July 16, 2014, in recognition of Berrada's successes on behalf of PNY, Berrada and PNY entered into a written contract, in addition to the 2013 Contract,

by which Berrada became a Vice President of PNY, and his responsibilities were expanded to include all of PNY's products rather than just PowerPacks and other accessories.  **[A1222(ln.13-22);    A1310(ln.22)-A1312(ln.20);    A1704-A1705; A2491-A2492(#9)].** As a Vice President, Berrada was to receive (1) an annual base salary of $120,000; (2) .5% of sales to existing customers of PNY's products; (3) 1% on sales to new customers of PNY's products; and (4) fringe benefits including medical, dental, vision and life insurance, participation in PNY's 401(k) plan, and paid time off (the "2014 Contract"). **[A1199(ln.8-24); A1234(ln.21-25); A1238 (ln.25)–A1239(ln.6);    A2491-A2492(#9);    A1664(ln.7)–A1665(ln.22);    A1666 (ln.22-25);    A1670(ln.17-19);    A1676(ln.23)–A1677(ln.6);    A1678(ln.17)–A1679 (ln.10);    A1492(ln.21)–A1493(ln.4);    A1494(ln.15)–A1495(ln.7);    A1496(ln.12) – A1497(ln.8);    A1502(ln.18)–A1503(ln.12);    A1704–A1705].** PNY failed to pay Berrada any of the percentage payments to which he is entitled under the 2013 Contract and paid him nothing at all pursuant to the 2014 Contract. **[A2494(#15); A1216(ln.21)–A1217(ln.15);    A1240(ln.5-12);    A1310(ln.18-19);    A1523(ln.11-19)].**

Appellees admitted they filed their Counterclaims in retaliation for Berrada filing this lawsuit. **[A3132(ln.2)-A3133(ln.4); A1368(ln.11-16); A1372 (ln.3-22)].** In addition, as set forth herein, their Counterclaims are factually and legally baseless.

On April 24, 2017, the District Court denied Berrada's motion for leave to

amend his Complaint to assert a retaliation claim under the FLSA. **[A3-A18].** By Order dated December 5, 2017, the District Court denied Berrada's motion for reconsideration of the April 24, 2017 Order. **[A19-A26].** By Order dated September 27, 2018, the District Court granted summary judgment to Defendants on all of Berrada's claims. **[A27-A44].** The District Court's entry of summary judgment in Appellees' favor on Berrada's claims is particularly perplexing since both the Hon. Judge Leda D. Wettre, U.S.M.J. and The Hon. Judge Susan D. Wigenton, U.S.D.J. had previously found disputed issues of fact in this action. (ECF #186, p.10; ECF #236, p.7; ECF #287-#288).

## SUMMARY OF ARGUMENT

In most appeals, the standard of review is a perfunctory matter given very little attention. In this case, however, the standard of review is one of the most important issues since, in granting Appellees' summary judgment motion as to <u>all</u> of Berrada's claims, the District Court improperly weighed the evidence, evaluated witness credibility, and made findings of fact. These errors are particularly harmful because, if there is no enforceable contract, then Berrada should be able to recover on an alternative quasi-contract theory.

Further, the District Court improperly held that a party to a contract cannot establish a disputed term based solely on his own testimony, but rather must present

additional direct evidence corroborating it. This is contrary to longstanding New Jersey law that oral contracts are equally enforceable as written ones.

Finally, the District Court improperly prohibited Berrada from amending his Complaint to include a retaliation claim under the FLSA even though Appellees made multiple admissions supporting such a claim.

## **LEGAL ARGUMENT**

### I.    **Standard of Review**

### A.    **Standard of Review of Order Granting Summary Judgment**

This Court must "'review a grant of summary judgment de novo, and thus apply the same standard as that used by the District Court.'" *Aleynikov v. Goldman Sachs Group, Inc.*, 765 F.3d 350, 357 (3rd Cir. 2014) (citation omitted). The District Court correctly set forth the summary judgment standard, as follows:

> In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' … the court's role is not to evaluate the evidence and decide the truth of the matter.

**[A-31].** Unfortunately, the District Court merely paid lip service to this standard, improperly evaluated and weighed the evidence, and invaded the province of the jury by making its own credibility determinations and factual findings. As detailed below, if the District Court had drawn justifiable inferences in Berrada's favor, it would have had to deny the motion for summary judgment.

6

### B.    Standard of Review of Motion to Amend Complaint

When a motion to amend "is denied on the grounds of futility, as it was here," this Court must apply the "same standard of legal sufficiency as applies under Rule 12(b)(6)." *Geness v. Cox*, 902 F.3d 344, 354 (3d Cir. 2018) (citing *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). Under that standard, judgment "is proper only if, accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not entitled to relief under any reasonable reading of the complaint." *McGovern v. City of Philadelphia*, 554 F.3d 114, 115 (3d Cir. 2009) (citation omitted).

### II.    The Court Improperly Granted Summary Judgment as to Count II for Breach of the 2013 Contract

### A.    A Plaintiff's Own Testimony is Sufficient to Establish a Contract

"When the evidence is conflicting it is for the jury to determine whether a contract does in fact exist, and, if so, what are its terms." *Am. Lumber & Mfg. Co. v. Atl. Mill & Lumber Co.*, 290 F. 632, 635 (3rd Cir. 1923). Under New Jersey law, oral contracts are enforceable in the same manner and on the same legal basis as written ones. *See, e.g.*, *Shebar v. Sanyo Bus. Sys. Corp.*, 111 N.J. 276 (1988); *Pascarella v. Bruck*, 190 N.J. Super. 118, 124 (App. Div. 1983) (finding it "of no consequence" that contract was oral). In other words, "contracts need not be in writing but may be evidenced by conduct rather than words." *Hogan v. Bergen Brunswig Corp.*, 153 N.J. Super. 37, 41 (App. Div. 1977); *see also*, Model Civil Jury Charge 4.10. In fact,

7

even the "anticipation of a written memorialization of an oral agreement does not as a matter of law vitiate an oral contract if the elements of a contract are contained in the oral agreement." *McBarron v. Kipling Woods, L.L.C.*, 365 N.J. Super. 114, 116 (App. Div. 2004).

This is not a case where the parties dispute whether an oral contract existed. Rather, the parties agree there was an oral contract, and that it provided Berrada a payment of $15,000 per month for twelve months and reimbursement of expenses. **[A2956(¶2);   A1216(ln.18)-A1218(ln.8);   A1223(ln.8-22);   A1296(ln.12-A1297 (ln.14); A2486-A2489(#5); A653(ln.13)-A654(ln.7)].** The material disagreement is whether that oral contract included the additional component of a payment to Berrada that was a function of sales of accessories. In the words of the District Court: "Here, the parties dispute whether the 2013 Contract included confidential percentage payments of PNY's worldwide sales and profits." **[A34].**

The District Court granted summary judgment in Defendants' favor on this Count because, in its view, "Other than Plaintiff's self-serving testimony, there is no evidence that the percentage payments were part of the 2013 Contract." *Id.* The District Court's holding was in error for two reasons.

First, the law does <u>not</u> require a plaintiff to present anything other than his own testimony to prevail on summary judgment. If there were such a requirement, then there never could be an enforceable oral contract if the only witnesses to the

8

formation of the contract are the parties thereto, which is what most frequently

occurs. Indeed, application of the District's Court holding to its logic extreme would

mean that no personal injury action could be prosecuted when the only two witnesses

to the accident were the drivers of the two vehicles involved.

The cases cited by the District Court do not support its conclusion. For

example, *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, actually supports Berrada's

position because it expressly recognized that a plaintiff's "own statements cannot be

dismissed simply because they are bare and self-serving." 678 F.3d 254, 264 (3d Cir.

2012). In *Gonzalez*, this Court cited *Kirleis v. Dickie, McCamey & Chilcote*, which

clearly demonstrates the error by the District Court. In *Kirleis*, the Defendant argued

that "Kirleis's 'self-serving and conclusory' affidavit cannot create a genuine issue

of material fact regarding the existence of an arbitration agreement." *Kirleis v.*

*Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3rd Cir. 2009) (emphasis

added). This Court rejected that argument. It recognized:

> Kirleis details the specific circumstances that rendered the formation of
> an agreement to arbitrate impossible. For example, she swore under
> oath that she 'was never provided with a copy of the By–Laws of
> defendant Firm,' 'never signed any agreement or document which
> refers to or incorporates the arbitration provision in the By–Laws,' …

*Id*. It then held that "[h]ad the Firm submitted contradictory evidence showing that

Kirleis had received the bylaws or had signed them, its argument regarding the

sufficiency of Kirleis's affidavit would merit further discussion. **Even then, the task**

**of weighing the evidence and choosing which side to believe would have been for a jury.**" *Id.* at 161-162 (emphasis added). Likewise, here a jury must be permitted to weigh the evidence and decide which side to believe regarding whether the 2013 Contract included the percentage payments.

*Gonzalez* presents a unique set of facts and is readily distinguishable. The issue in it was whether Gonzalez intended to give false testimony when he told an immigration official, in connection with his naturalization petition, that he had no children. Gonzalez subsequently provided a sworn statement in which he claimed he did not realize he had children when he made that statement, even though he obviously knew he had children as evidenced by undisputed facts, *inter alia*, that he had supported the children's mother during her pregnancy and that the children called him "dad." *Gonzalez*, 678 F.3d 254 at 261-264.

Importantly, this Court first noted that "Because state of mind is the key issue on the merits, Gonzalez's own statements cannot be dismissed simply because they are bare and self-serving." *Id.* at 264. It then recognized that "'a bare but sworn assertion of a claimant's lack of knowledge will not suffice to create a material dispute of fact where that **assertion is impeached by a well supported showing to the contrary.**'" *Id.* at 263 (emphasis added) (quoting *United States v. Premises Known as 717 S. Woodward St., Allentown, Pa.*, 2 F.3d 529, 534 (3rd Cir. 1993)). It further explained that "'[a]n affidavit of the claimant denying knowledge is

10

competent evidence tending to show this and *in the absence of other evidence rendering it incredible*, such an affidavit creates a genuine issue of material fact.'" *Id.* at 264 (emphasis added) (citing *717 S. Woodward St.*, 2 F.3d at 534) (explaining that "'much depends upon the credibility of witnesses testifying as to their own states of mind, and assessing credibility is a delicate matter best left to the fact finder'") (citation omitted)). But, because Gonzalez's testimony that he did not know that he had children was so demonstrably false, this Court held that "'the court, based on all of the evidence, can say with confidence that a rational trier of fact could not credit the claimant's denial.'" *Id.*, at 264 (citation omitted).

In this case, there are no undisputed facts which contradict Berrada's testimony that the parties agreed to the percentage payments in the 2013 Contract. Rather, there is Berrada's testimony that Appellees agreed to the percentage payments, and Cohen's self-serving denials. In other words, there is a fact dispute regarding whether the percentage payments were a term of the oral 2013 Contract.

In contrast to *Gonzalez*, there is nothing patently unbelievable about Berrada's testimony that the 2013 Contract included percentage payments, particularly when viewed in the context of the corroborating circumstantial evidence of (a) the fact that Berrada gave up a lucrative business opportunity selling shredders through his own company to accept Appellees' offer of employment, which would have made financial sense only if he anticipated making at least as much money with Appellees

as he anticipated making through his own business **(A1201(ln.17-24); A1204 (ln.21)**
**–A1207(ln.5);   A2476-A2480;   A2481-A2483;   A2500-A2506;   A2507-A2509;**
**A3373-A3408; A2486-A2489(#5))**; and (b) as Appellees set forth in the July 16,
2014 offer letter (which became the 2014 Contract), PNY does, as a business
practice, make percentage payments to individuals providing services to it that are a
function of sales **(A1704-A1705).** It is therefore a fair inference that Appellees
agreed to make percentage payments to Berrada in 2013, just as they subsequently
did in 2014.

Thus, the District Court's holding that "Plaintiff is asking this Court to make
unreasonable inferences regarding the 2013 Contract" is erroneous. **[A35].** Rather,
Berrada merely asked the District Court to accept his testimony as true for purposes
of Appellees' summary judgment motion, and to allow a jury to determine which
party is being truthful. Instead, the District Court usurped the jury's function and
violated the principle that a court should not weigh the evidence or make credibility
determinations on a motion for summary judgment.

In further support of its ruling that a party seeking to establish an oral contract
must have direct corroborating evidence beyond his own testimony, the District
Court cited *Soto v. Trella*, 2007 WL 4355463 (D.N.J. Dec. 10, 2007), her own
Opinion in another case, which involved a *pro se* prisoner who claimed he had been
beaten by corrections officers. The prisoner did not have any physical indications

12

that he had been beaten, such as bruising or cuts, which one logically would expect to see if he had in fact been beaten.

The complete absence of any physical evidence of a physical attack in *Soto* is markedly different from this case, where the parties agree there was an oral contract and agree on a number of its terms but disagree whether an additional term was part of the contract. Further, one would not necessarily expect there to be any tangible evidence of an oral contract because, by its very nature, oral contracts are not reduced to writing. Application of the District Court's logic would mean that all oral contracts need to be reduced to writing to be enforceable, which of course would make them written contracts. Such a requirement would contradict long-standing New Jersey law that oral contracts are equally enforceable as written ones. See, e.g., *Shebar*, 111 N.J. 276; *Pascarella*, 190 N.J. Super. at 124.

## B.   On a Summary Judgment Motion the Court Cannot Make Credibility Determinations Against the Non-Moving Party

Second, despite the summary judgment standard, in granting Appellees' motion the District Court made credibility determinations against Berrada. This is demonstrated by its statement that: "This Court notes that over the course of litigation, Plaintiff has modified the terms of the 2013 Contract as they relate to the percentage payments." **[A34].** Contrary to this characterization, Berrada's Amended Complaint did not "modify" the terms of the 2013 Contract. Rather, he simply clarified its terms. In any event, it is the province of the jury, rather than the court,

to make any such credibility determinations.

The District Court also ignored conclusive evidence regarding Cohen's lack of credibility. Specifically, Appellees alleged in ¶14 of their Counterclaim that in the summer of 2013, Berrada insisted on being a consultant rather than an employee expressly "to avoid exposing himself to additional obligations in his matrimonial and child support proceedings." **[A198(¶14)].** However, during his deposition Cohen admitted he did not even know about Berrada's divorce until 2014. **[A1397(ln.3-12].**

Berrada testified that both parties signed the 2014 Contract on July 16, 2014, and that he did not receive any other version of it until discovery in this litigation. **[A1237(ln.9-25); A1763(¶¶16-18)].** Appellees' lack of credibility is further demonstrated by their claim that Berrada did not execute the 2014 Contract on July 16, 2014, and their irreconcilably conflicting testimony about who at PNY supposedly (a) negotiated with Berrada after July 16, 2014 regarding the terms of that offer; and (b) provided Berrada revised draft offers after July 16, 2014.

At a November 13, 2015 discovery hearing before Judge Hopkins of the United States District Court for the Southern District of Florida prior to the transfer of this action to the District Court for New Jersey, Berrada sought copies of the emails by which Appellees claimed, under oath, they supposedly sent him subsequent revised offer letters. **[A1729-A1730(¶7)].** During the following

colloquy, Appellees' counsel changed their story and was forced to admit the alleged

revised draft offer letters were never actually "sent" to Berrada:

| Plaintiff's Counsel: | If I'm going to get these alleged transmittal e-mails by Tuesday, that's fine, and the balance to follow, that's fine. |
|---|---|
| The Court: | So are the alleged transmittal e-mails going to be included in the production by Tuesday? |
| Defendants' Counsel: | These documents - - My understanding is that they are not transmitted by e-mail but they were exchanged in person. . . . |
| Defendants' Counsel: | Your Honor, we do not state in the Declaration that these were sent by e-mail. And I - - I don't think - - |
| The Court: | Well, how were they sent? |
| Defendants' Counsel: | We believe they were all exchanged in person when Mr. Berrada was in the office. |
| The Court: | So how does that fall within the conundrum of the word sent? Does delivered in person to you mean sent? |
| Defendants' Counsel: | Well - - . . . |
| The Court: | They weren't sent by messenger, right? |
| Defendants' Counsel: | I don't believe so, Your Honor. . . . |
| The Court: | **So, you know, Plaintiff, you're getting these admissions on the record as to what the situation is**. |

**[A1831(ln.15-22);  A1832(ln.17-25);  A1833(ln.6-7, 14-15)]** (emphasis added).

At the same hearing, Appellees made a new misrepresentation, claiming the

purported revised draft offer letters were "all exchanged in person when Mr. Berrada was in the office." **[A1832(ln.17-25)]**. However, Berrada was not even in New Jersey on August 1, 2014, when Appellees claim they handed him one of the revised draft offer letters. **[A1763(¶17); A1812-A1818]**.

Rather, Appellees' own testimony proves that nobody provided any subsequent draft offer letters to Berrada. Ciano testified that Cohen negotiated the 2014 Contract with Berrada and PNY's Director of Human Resources, Suzanne Blanchette, provided copies of the subsequent versions to Berrada. **[A1498(ln.5)-A1500(ln.2); A1501(ln.1-17)]**. However, Blanchette testified that she was not involved in those negotiations and does not recall ever providing Berrada any drafts of the letter. **[A1667(ln.1-6); A1669(ln.20)–A1671(ln.-3); A1672(ln.24)–A1673(ln.4); A1674(ln.9-18); A1675(ln.18)-A1676(ln.17)]**. Similarly, Cohen testified he was not involved in drafting, negotiating or providing Berrada any subsequent offer letters, and even admitted he had not seen the purported subsequent drafts until a few weeks before his December 2016 deposition. **[A1375(ln.6-11); A1376(ln.1-10;19-24); A2213(ln.18-24); A1394(ln.9-18); A1395(ln.22)–A1396(ln.2)]**. Thus, contrary to Appellees' assertion, nobody even claims to have provided any subsequent versions of the July 16, 2014 offer letter to Berrada.

### III. The Economic Loss Rule Does Not Bar Fraudulent Inducement Claims

Further, the District Court erroneously relied on the economic loss rule to

dismiss Berrada's fraud claim even though that doctrine does not apply to claims of fraudulent inducement. New Jersey Courts recognize fraudulent inducement in connection with employment contracts. *See, e.g., McConkey v. AON Corp.,* 354 N.J.Super. 25 (App. Div. 2002). It is unclear whether New Jersey even applies the economic loss doctrine to intentional torts. But even assuming *arguendo* that it does, "'to break a promise is to breach a contractual duty; to falsely state that one intends to honor a promise is a misstatement of present fact and breaches a separate and extraneous duty not to commit fraud.'" *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 564 (D.N.J. 2002). In other words, "[f]raud claims can proceed alongside breach of contract claims where there exists fraud in the inducement of a contract or an analogous situation based on pre-contractual misrepresentations." *RNC Sys., Inc. v. Modern Tech. Grp., Inc.,* 861 F.Supp.2d 436, 451(D.N.J. 2012). Thus, since Berrada alleges that Appellees fraudulently induced him to enter into the 2013 Contract, his fraud claim could not be barred by the economic loss rule.

The evidence here supports Berrada's fraud claim. While generally misrepresentations of future events are not actionable as fraud, there is an exception if the promisor made a "false representation of an existing intention" or "if the promisor knew when he made it that the promise could not or would not be fulfilled." *Barry by Ross v. New Jersey State Highway Auth.*, 245 N.J. Super. 302, 310 (Ch.

Div. 1990) (citing *Ocean Cape Hotel Corp. v. Masefield Corp.,* 164 A.2d 607 (App. Div. 1960). Thus, "where a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud[ .]" *Lo Bosco v. Kure Engineering Ltd.,* 891 F.Supp. 1020, 1031-1032 (D.N.J.1995) (citation omitted). Further, it is well-settled that intent to defraud may be inferred from circumstantial and indirect evidence, and the totality of the circumstances, which will include the jury's evaluation of demeanor and credibility. *Liberty Bell Bank v. Rogers*, 2018 WL 834197, *4 (3rd Cir. 2018); *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1118 (D.C. Cir. 2009); *Judson v. Peoples Bank & Tr. Co. of Westfield*, 17 N.J. 67, 76 (1954).

Here, it is a fair and reasonable inference from the evidence that Appellees' intent from the beginning was to milk Berrada of all his knowledge and expertise and then discard him without paying him everything they promised. Berrada testified that Cohen promised him that PNY would provide him the necessary financing, infrastructure, and support to develop the shredder business, and Berrada would receive 5% of the gross sales and 25% of the gross profits from the sales of accessories. **[A2486-A2489(#5)].** Nonetheless, Appellees strung Berrada along with respect to launching the sale of shredders before they refused to do so. [A2490 (#8); A2957 (#4); A3498-A3511]. Despite Appellees' attempt to blame Berrada for

PNY's decision not to sell shredders, Stuto admitted that Cohen made that decision. **[A1523(ln.1-19)].**

In the meantime, Berrada jump-started PNY's faltering accessories business, which resulted in the sales of PowerPacks increasing more than thirty-five fold to more than $17.7 million, and then squeezed Berrada out of PNY and refused to pay him a single penny of the commissions he earned. Appellees' conduct should be viewed in the context of the fact that they required Berrada to keep the 2013 Contract secret and not put it in writing **(A2486-A2489(#5)** and now falsely deny under oath that they entered into not only the oral 2013 Contract, but also the 2014 Contract, when Cohen and Ciano both admitted under oath that Appellees had reached a verbal agreement with Berrada on July 16, 2014, which was then reduced to writing and signed by PNY on that date. **[A1346 (ln.9)–A1347(ln.5); A1363(ln.13)–A1364 (ln.11); A1494(ln.15)-A1495(ln.7); A1496(ln.12-18)].** Appellees' fraudulent intent is buttressed by the fact that PNY, pursuant to its *modus operandi*, also refused to pay one of its suppliers under a licensing agreement, which resulted in a $28.5 million judgment against PNY. **[A2011-A2014].**

Further, the District Court characterized Berrada's allegations of fraud as "puffery." In doing so, it referenced only the allegation in ¶21(a)(i) of the Amended Complaint that Defendants represented that "Berrada would make more money working for Cohen and PNY in the long run ... because they were entering into a

long-term agreement." **[A33].** "Puffery is an exaggeration or overstatement expressed in **broad, vague**, and **commendatory** language." *Castrol Inc. v. Pennzoil Co.,* 987 F.2d 939, 945 (3d Cir. 1993) (emphasis added).

But even assuming *arguendo* that the District Court properly characterized one of Appellee's representations as "puffery," which it did not, it still overlooked Appellees six other representations listed in ¶21 of the Amended Complaint. For example, he alleges the following specific representation by Cohen:

> As long as PNY continued to sell the existing products and new products that were managed, sourced, developed, designed, marketed and/or sold by Berrada or under his leadership, Berrada would continue to receive a percentage payment equal to 5% of the worldwide gross sales of those products plus 25% of the gross profit generated from the worldwide sales of those products.

**[A161(¶21(b)(v)); A2486-A2489(#5)].** Under no stretch of the imagination could this representation regarding very specific payments be characterized as "puffery."

## IV.    An Express Contract Does Not Bar a Quasi Contract Claim Regarding a Different Subject Matter

With respect to Berrada's quasi-contract claims, the District Court cited the well-known law that such a claim will not lie where an "express contract exists concerning the **identical subject matter**." **[A37]** (emphasis added). The District Court then improperly made a factual finding that "because the 2013 Contract is a valid oral agreement that squarely addresses Plaintiff's compensation during the relevant time period, including in 2014, this Court need not reach Plaintiff's quasi-

contract claims." (*Id.*). The District Court applied this reasoning to Counts III, V, and VII, and thus dismissed those claims for unjust enrichment (2013 Contract), promissory estoppel, and quantum meruit, respectively. (*Id.*).

In improperly making a factual finding that the oral 2013 Contract continued to address Berrada's compensation after July 16, 2014, the District Court made three critical errors. First, it implicitly made a factual finding that the 2014 Contract was intended to <u>replace</u> the 2013 Contract, and entirely ignored the record evidence that the 2014 Contract was <u>in addition to</u> the 2013 Contract. As set forth above, the record evidence established that the 2013 Contract and 2014 Contract each addressed different job responsibilities, and each had its own compensation structure that was based upon different metrics than the other. Specifically, the subject matter of the 2013 Contract was Berrada's work regarding accessories, and the percentage payments component of Berrada's compensation was a function of sales of that product line only. By contrast, the 2014 Contract made Berrada a Vice President of PNY (an additional and expanded role), and the percentage payments component of his compensation pursuant to the 2014 Contract was a function of sales of <u>all</u> products sold by PNY, not just accessories. Berrada actually took over that new and expanded role. **[A1224(ln.3-25); A1239(ln.13-20)].** He did so based on the understanding he would be compensated for his additional responsibility and effort.

In short, the two contracts did not have an "identical subject matter," but rather

are the proverbial "apples to oranges" comparison. Nonetheless, the District Court improperly invaded the province of the jury and made a factual determination that the 2014 Contract was intended to <u>replace</u> the 2013 Contract, and that in the absence of the 2014 Contract, the 2013 Contract covered all services Berrada provided to Appellees.

Second the District Court noted that PNY paid Berrada $15,000 per month for services rendered between October 2013 and October 15, 2014. **[A28-A29].** However, it ignored the record evidence that while the 2013 Contract provided for payments of $15,000 per month, those payments were only for 12 months under the 2013 Contract. **[A2486-A2489(#5)].** Similarly, it ignored Ciano's testimony that if Berrada provided services to PNY after those 12 months, then PNY does not owe Berrada anything for those services because Berrada did not sign a written contract. If Ciano is correct that there was no contract after 12 months, then Berrada is entitled to recover under a quasi-contract theory.

Third, the parties to the two Contracts are not identical. While only Berrada and PNY were parties to the 2014 Contract, there is evidence that Cohen also was a party to the 2013 Contract. **[A2486-A2489(#5)].**

### V.  A Contract is Formed if a Party Makes Immaterial Changes to a Contract Before Accepting it

The District Court improperly dismissed Berrada's claim that PNY breached the 2014 Contract. When the "parties agree on **essential** terms and manifest an

22

intention to be bound by those terms, they have created an enforceable contract."

*Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992) (emphasis added). Thus, a

contract is formed despite any immaterial changes to the offer upon acceptance.

With respect to the 2014 Contract, it is undisputed that on or before July 16,

2014, Appellees verbally offered Berrada and Berrada verbally accepted the position

of Vice President of PNY's Mobility Business Unit with a $120,000 base salary, .5%

of sales to existing customers, 1% on sales to new customers, and fringe benefits,

and this agreement was memorialized in the July 16, 2014 written offer letter.

**[A2491–A2492(#9); A1199(ln.8-14); A1222(ln.13-22); A1238(ln.19-24); A1247
(ln.17-22); A1310(ln.22)–A1312(ln.20); A1381(ln.20)–A1382(ln.16); A1385
(ln.5)–A1386(ln.8); A1388(ln.16-25); A1391(ln.1-13); A1392(ln.15)–A1393
(ln.10)].** As Ciano testified:

> Q.  Prior to July 16th, you indicated there was an agreement, a verbal agreement reached between you, Mr. Cohen and Mr. Berrada regarding the circumstances of his employment as a vice president. Correct?
>
> A.  Yes.
>
> Q.  And that -- and that you directed Miss Blanchette to reduce that agreement to this writing in this offer letter. Correct?
>
> A.  Myself or Mr. Cohen.
>
> Q.  Okay.
>
> A.  One of us did, yes.

Q.      So the question is: Did this document accurately reflect the agreement in terms of the commission percentages, specifically .5 percent on existing customer sales and 1 percent on new customer sales?

A.      Yes.

**[A1502(ln.18)–A1503(ln.10); A1492 (ln.21)–A1493(ln.4);A1496(ln.12-18)].** This oral contract is fully enforceable, whether or not it was confirmed in writing.

It is further undisputed that, later the same day, Appellees provided Berrada a signed written contract memorializing the terms of that verbal agreement. **[A1199 (ln.8-24); A1234(ln.21-25); A1238(ln.25)–A1239(ln.6); A2491-A2492(#9); A1664(ln.7)–A1665(ln.22); A1666(ln.22-25); A1670(ln.17-19); A1678(ln.17)– A1679(ln.10); A1502(ln.18)–A1503(ln.12); A1704–A1705].** Further, it is undisputed that Appellees did not pay Berrada any of the agreed-upon percentage payments. **[A2494(#15)].**

The District Court concluded that the written contract is unenforceable because Berrada crossed off a few sentences before he signed and returned it. However, that does not change the fact that the parties undisputedly already had entered into an enforceable verbal agreement which they partially performed, including by Berrada increasing his job duties for PNY to include <u>all</u> of PNY's products rather than just accessories **(A1224(ln.3-25); A1239(ln.13-20))**; Berrada stopping sending invoices to Defendants for his work because he believed he had become a W-2 employee **(A1281(ln.13)–A1282(ln.6)); A1308(ln.23)-A1310**

24

**(ln.21))**; and both parties holding Berrada out as PNY's Vice President **(A1380 (ln.19)-A1381(ln.1); A1760-A1762(¶¶7-12); A1578(ln.4-17))**. As this Court has recognized,

> [T]he meeting of minds of contracting parties may occur— and be shown — not by words alone but by conduct. ... Where one makes an offer and assents to an acceptance which is not responsive to the proposal, a contract is made and he is, of course, bound by it. ... The offeror's assent to new terms imposed by the offeree in his acceptance may be inferred from the fact that the parties thereafter proceeded to conduct business under the conditional acceptance.

*Am. Lumber*, 290 F. at 634–635.

As this Court further held, "performance of the parties demonstrates an acceptance of the written offer ... and thus an enforceable contract." *Dandana, LLC v. MBC FZ-LLC*, 507 F. App'x. 264, 269 (3rd Cir. 2012) (unpublished) (citing *United States ex rel. Worthington Pump & Mach. Corp. v. Johnson Contracting Corp.,* 139 F.2d 274, 277 (3rd Cir. 1943)). The District Court ignored this principle and the record evidence which supports its application here.

Further, since the changes Berrada made to the written contract were immaterial, it is enforceable. As the Supreme Court of the United States has held , a matter is only material if it is "likely ... [to] induce a reasonable person to manifest his assent. ... The **materiality standard is demanding**." *Universal Health Services, Inc. v. United States*, 136 S. Ct. 1989, 2003 (2016) (emphasis added). As noted herein, questions of intent are questions of fact to be resolved by the jury.

Berrada crossed off three items. One item he crossed off is a paragraph which affirmed his status as an employee at-will. Berrada was an employee at-will of PNY with or without that language in the written contract. New Jersey law imposes a strong presumption that employment is "at-will." *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (unpublished). That presumption is especially strong where, as here, the employee signed an employment application expressly stating that, if hired, he would be an employee at-will. See, *Renart v. Chartwells*, 122 F. App'x 559 (3d Cir. 2004) (unpublished).

In addition, Berrada struck a sentence which said PNY could change his commissions as it deemed necessary. Since Berrada was an employee at-will under the 2014 Contract, with or without that language in the agreement, PNY had the right to <u>prospectively</u> change his commissions at any time, but did <u>not</u> have the right to <u>retroactively</u> change his commissions. *Winslow v. Corp. Express, Inc.*, 364 N.J. Super. 128, 139 (App. Div. 2003).

Berrada also removed language from the 2014 Contract stating it was the only employment agreement between the parties. That language was immaterial because (a) as noted above, it is undisputed that the 2014 Contract memorialized the terms of the verbal agreement that the parties entered into on the same date for Berrada to become a Vice President of PNY; and (b) Berrada has brought this action to enforce the terms of the written agreement, not to vary them. Further, the evidence supports

a finding that, prior to July 16, 2014, Berrada was an independent contractor rather than an employee of PNY, thus making it immaterial whether the 2014 Contract stated that Berrada did not have any prior <u>employment</u> contract with PNY, since the prior contract was not an employment contract. **[A1221(ln.7-20); A1265(ln.1-3); A1295(ln.14-19); A1300(ln.16-23)].**

To the extent Berrada's changes to the written 2014 Contract rendered it a counteroffer, it still became a binding contract since PNY gave "no indication that [it] objects to any of the offer's essential terms, and passively accepts the benefits of an offeror's performance." *Weichert*, 128 N.J. at 436-37. As indicated above, pursuant to that contract Berrada's role expanded to include all of PNY's products, the parties began holding Berrada out as a Vice President, and Berrada stopped sending PNY invoices for his services. Thus, to the extent Berrada's cross-outs constituted a counteroffer, Appellees accepted that counteroffer.[1]

## VI.    The Highly Compensated Employee Exemption to the FLSA Only Applies to Individuals Regularly Paid on a Salary Basis

The District Court erroneously concluded that the highly compensated

---

[1] The District Court entered summary judgment on Count VIII (New Jersey Wage Payment Act) and Count XI (New Jersey Independent Sales Representative Act) for a number of the same reasons it granted summary judgment as to Count II (Breach of 2013 Contract) and Count IV (Breach of 2014 Contract). (SJ Order, p. 12). Accordingly, Berrada's arguments set forth herein regarding Counts II and IV apply to the granting of summary judgment as to Counts VIII and XI as well.

exemption bars Berrada's FLSA claim as a matter of law. For that exemption to apply, the employer must prove it paid the employee at least $455 per week on a "salary basis." 29 C.F.R. §541.601(b)(1). To be on a "salary basis," compensation must be paid on a regular basis no less frequent than monthly. 29 C.F.R. § 541.600(b). That means the employee "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a) (emphasis added). Thus, an employer cannot use this exemption if it failed to pay the employee his salary every pay period during which he worked. *Id.*

The highly compensated employee exemption does not apply here since Appellees failed to pay Berrada anything at all from September 2013 through March 2014, and again from November 2014 through March 2015, and thus did not pay him on a salary basis. **[A1253(ln.6)-A1254(ln.4); A1275(ln.25)–A1276(ln.23); A1278(ln.9-19); A1308(ln.23)-A1310(ln.21)].**

### VII. Berrada Should be Permitted to Assert a FLSA Retaliation Claim Because Appellees Admitted their Retaliatory Intent

Finally, the District Court should have permitted Berrada to assert his retaliation claim under the FLSA. The FLSA expressly prohibits employers from retaliating against an employee because he asserted a claim under FLSA. 29 U.S.C. § 215(a)(3). It is well-recognized that a lawsuit or counterclaim can be a prohibited

act of retaliation if it was motivated by retaliatory animus. *Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 740 (1983); *Burlington Northern & Santa Fe Ry v. White*, 548 U.S. 53, 67 (2006); *Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008); *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1406-08 (10th Cir. 1992).

The record is replete with proof, much of it admissions by Appellees, that Appellees filed their Counterclaims in retaliation for Berrada filing his Complaint, and that many of Appellees' allegations supporting those claims are false. For example, despite Appellees' express allegation **(A200 (¶24))**, Cohen admitted he does not blame Berrada specifically for the alleged excess inventory of PowerPacks, but rather the PNY team as a whole, and admitted he is not seeking any damages from Berrada for the alleged excess inventory. **[A3132(ln.2)-A3133(ln.4); A1372 (ln.3-22)].** At the same time, Cohen admitted that (a) Appellees filed their Counterclaims against Berrada because "he sued us, so we have to reply"; and (b) PNY is not seeking damages from other team members because "They didn't sue us." **[A3132(ln.2)-A3133(ln.4); A1368(ln.11-16); A1372 (ln.3-22)].**

Moreover, contrary to Appellees' allegation that in the summer of 2013 Berrada specifically insisted on being a consultant rather than an employee "to avoid exposing himself to additional obligations in his matrimonial and child support proceedings" (A198 (¶14)), at his deposition Cohen admitted he did not even know about Berrada's divorce until sometime in 2014. **[A1397(ln.3-12)].**

Further, although Appellees alleged that in October 2013 Berrada made a commitment to increase PNY's sales by $2.5 million in 2013 and by $10 million in 2014 (A199 (¶16)), when asked why Appellees sued Berrada for allegedly not reaching those targets despite Appellees' claim that his function was limited to giving advice that Appellees could accept or reject, Cohen's response was that it was "a strategy that we worked with counsel." **[A1405(ln.6-23)]**.

In fact, once the summary judgment Order was entered, the only claims that remained pending before the District Court were Appellees' Counterclaims. Rather than bring their Counterclaims to trial, Appellees instead <u>voluntarily</u> dismissed their claims with prejudice **[A44A-A44B]**, which is clear evidence of the specious, frivolous, and retaliatory nature of the Counterclaims, as well as implicitly demonstrating the meritorious nature of Berrada's proffered retaliation claim.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Appellant, Mark Berrada, respectfully moves the Court to (a) reverse the summary judgment Order; and (b) reverse the District Court's denial of Berrada's motion for leave to amend his Complaint to assert a retaliation claim under the FLSA.

## CERTIFICATION OF COUNSEL

1.    Craig A. Rubinstein and Jonathan I. Nirenberg certify that they have been admitted to practice before this Court.

2.   The text of the electronic Brief is identical to the text in the paper copies.

3.   The Trend Micro Security Agent, Version 11, virus detection program was run on the file, and no virus has been detected.

Dated: May 13, 2019

Katzman, Wasserman,                     Rabner Baumgart Ben-Asher
  Bennardini & Rubinstein, P.A.            & Nirenberg, P.C.


By:   /s Craig A. Rubinstein          By:   /s Jonathan I. Nirenberg
      Craig A. Rubinstein                   Jonathan I. Nirenberg

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Opening Brief of Plaintiff-Appellant Mark Berrada will be served electronically to THOMAS P. LANE, ESQ./SETH E. SPITZER, ESQ., Winston & Strawn, PPL, 200 Park Avenue., New York, NY 10166; and JAMES S. RICTHER, ESQ., Winston & Strawn, LLP, One Riverfront Plaza, Suite 730, Newark, NJ 07102, this 13th day of May, 2019.

KATZMAN, WASSERMAN,
  BENNARDINI & RUBINSTEIN, P.A.
Suite 140/Boca Corporate Plaza
7900 Glades Road
Boca Raton, Florida 33434
Tel.:   561-477-7774
Fax:   561-477-7447

By _____/s/ Craig A. Rubinstein_____.
      STEVEN M. KATZMAN, ESQ.
      Florida Bar No.: 375861
      smk@kwblaw.com
      CRAIG A. RUBINSTEIN, ESQ.
      Florida Bar No.: 77755
      car@kwblaw.com

and

31

HARDOLD RABNER, ESQ.
hrabner@rabnerbaumgart.com
JONATHAN I. NIRENBERG, ESQ.
jnirenberg@njemploymentlawfirm.com
Rabner Baumgart Ben-Asher & Nirenberg, P.C.
52 Upper Montclair Plaza
Upper Montclair, NJ 07043
Tel:   973- 744-4000
Fax:  973-783-1524

No. 19-1152

_____

## In the UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

MARK BERRADA,

Plaintiff-Appellant,

v.

GADI COHEN, and
PNY TECHNOLOGIES, INC., a Delaware corporation,

Defendants-Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Civil Action No. 2:16-cv-00574 (SDW-LDW)

_____

PLAINTIFF-APPELLANT MARK BERRARA'S APPENDIX
VOLUME I
(A1 to A44B)

_____

Craig A. Rubinstein
Katzman, Wasserman,
  Bennardini & Rubinstein, P.A.
7900 Glades Rd., Suite 140
Boca Raton, FL 33434
Tel: (561) 477-7774
Fax: (561) 477-7447
car@kwblaw.com

Jonathan I. Nirenberg
Rabner Baumgart
  Ben-Asher & Nirenberg, P.C.
52 Upper Montclair Plaza
Upper Montclair, NJ 07043-1391
Tel: (973) 744-4000
Fax: (973) 783-1524
JNirenberg@njemploymentlawfirm.com

# TABLE OF CONTENTS

## VOLUME I

(A1 to A44B)

Notice of Appeal to the United States Court of Appeals for the Third Circuit, dated January17, 2019 ............................................................... A1

Memorandum Opinion and Order, dated April 24, 2017 ...................... A3

Memorandum Opinion and Order, dated December 4, 2017 ............... A19

Opinion, dated September 26, 2018...................................................... A27

Stipulation of Dismissal with Prejudice, dated December 20, 2018.A44A

## VOLUME II

(A45 to A420)

U.S. District Court, District of New Jersey, Civil Docket for Case #2:16-cv-00575-SDW-LDW ............................................................................. A45

Complaint, dated September 10, 2015.................................................. A86

   Exhibit A...................................................................................... 98A

Defendant PNY Technologies, Inc's Answer, Affirmative Defenses, and Counterclaims, dated October 20, 2015............................................. A100

Answer and Affirmative Defendants to PNY Technologies, Inc's Counterclaim, dated October 23, 2015 ............................................... A121

Defendant Gadi Cohen's Answer, Affirmative Defenses, and Counterclaim, dated June 3, 2016....................................................... A127

Answer and Affirmative Defenses to Defendant Gadi Cohen's Counterclaims, dated June 22, 2016 ................................................... A149

Amended Complaint, dated April 26, 2017........................................ A155

   Exhibit A.................................................................................... A175

Answer, Affirmative Defenses, and Counterclaims of Defendants Gadi
Cohen and PNY Technologies, Inc., dated May 10, 2017 ................ A177

Answer and Affirmative Defenses to Defendants' Counterclaim, dated
May 2, 2018 ...................................................................................... A220

Exhibit A to Plaintiff's Brief in Support of Motion to Amend
Complaint: Proposed Amended Complant, dated October 14, 2016 . A233

Declaration of James S. Richter in Support of Defenants' Opposition to
Plaintiff's Motion for Leave to File an Amended Complaint, dated
October 24, 2016................................................................................ A253

    Exhibit A: Letter to Mark Berrada, dated July 16, 2014.......... A255

    Exhibit B: Redlined comparison between Plaintiff's original
    Complaint and Proposed Amended Complaint ........................ A258

    Exhibit C: Draft letters addressed to Mark Berrada ................. A285

    Exhibit D: Defendant PNY Technologies, Inc.'s Second Request
    for Production of Documents, dated August 15, 2016............. A308

    Exhibit E: Plaintiff Mark Berrada's Response to Defendant PNY
    Technologies, Inc.'s Second Request for Production of Documents,
    dated September 12, 2016 ....................................................... A315

    Exhibit F: Exceprts from January 20, 2016 Transcript of Discovery
    Hearing before the Hon. James M. Hopkins, U.S.M.J. ............ A319

    Affidavit of Mark Berrada, dated December 14, 2015............. A329

    Exhibit A:  Letter to Mark Berrada, dated July 16, 2014......... A338

    Exhibit B:  Supplemental Individual Disability Insurance Plan,
    Personally designed for: Mark Berrad, dated September 2, 2014
    ............................................................................... A338

    Exhibit C:  Email from Mark Berrada to Gadi Cohen, dated
    September 16, 2014 ................................................................. A352

    Exhibit D:  Email from Mark Berrada to Gadi Cohen, dated
    October 3, 2014 ...................................................................... A352

Exhibit E:  Email from Arnold Staton to Mark Berrada, dated July 16, 2014  .................................................................. A354

Exhibit F:  Business Card for Mark Berrada, PNY, Vice President Mobility & Accessories Business Unit..................................... A359

Exhibit G:  Email from Dave Peterson to Lauren Hall, dated August 19,  2014...................................................................... A360

Exhibit H:  Email from Philip Berkowitz to various recipients, dated August 21, 2014 ............................................................ A361

Exhibit I:  Email from Nicholas Mauro to Maria Ames, dated September 29, 2014 ................................................................. A362

Exhibit J:  Email from Gadi Cohen to Mark Berrada, dated August 13, 2014 ................................................................... A363

Exhibit K:  Email from Heidi Stuto toMark Berrada, dated August 12, 2014  .................................................................. A365

Exhibit L:  Email from Mark Berrada to Mark Ciano, dated November 11, 2014 ................................................................. A379

Exhibit M:  Email from United Airlines, Inc. to Mark Berrada, dated July 30, 2014 ................................................................. A383

Exhibit N:  Email from Mark Berrada to Gadi Cohen, dated July 30, 2014 ................................................................... A390

Exhibit O:  Email from Mark Berrada to Gadi Cohen, dated September 15, 2014 ............................................................. A391

Exhibit P:  Email from Mark Berrada to Gadi Cohen, dated May 15, 2014 ................................................................... A392

Exhibit Q:  Email from Mark Berrada to Gadi Cohen, dated May 15, 2014 ................................................................... A393

Supplemental Certification of Jonathan I. Nirenberg, dated February 10, 2017 ................................................................... A396

Exhibit A:  Proposed Amended Complaint including FLSA
retaliation claim, dated October 14, 2017 ................................ A398

[Exhibit B:  Omitted from Appendix]

## VOLUME III

(A421 to A815)

Defendants' Statement of Material Facts Not in Dispute in Support
of Their Motion for Summary Judgment, filed March 22, 2018
[Redacted.  Full version at A2365] ...................................... A421

Declaration of Mark Ciano in Support of Defendants' Motion for
Summary Judgment, dated March 8, 2018 ......................... A451

Declaration of Harvey Etter in Support of Defendants' Motion for
Summary Judgment, dated March 9, 2018 ......................... A453

Declaration of James S. Richter in Support of Defendants' Motion for
Summary Judgment, dated Marh 20, 2018 ......................... A456

    Exhibit 1:  Amended Complaint, dated April 26, 2017
    [Omitted.  Copy at A155]

    Exhibit 2:  Answer, Affirmative Defenses, and Counterclaims of
    Defendants Gadi Cohen and PNY Technologies, Inc., dated
    May 10, 2017  [Omitted.  Copy at A177]

    Exhibit 3:  Resume of Mark Berrada ........................ A473

    Exhibit 4:  Excerpts from the December 16, 2016, June 1, 2017
    and August 22, 2017 deposition transcripts of Mark Berrada
    [Redacted.  Unredacted version at A2395] ............... A477

    Exhibit 5:  Decision in Martin-Berrada v. Berrada, Docket No. V-
    5074/6-07 (N.Y. Fam. Ct. Dec. 8, 2008) ................... A559

    Exhibit 6:  Garnishee Office Depot, Inc.'s Answer to Writ of
    Garnishment, Martin-Berrada v. Berrada, Case No.
    502012DR000792 (Fla. Cir. Ct. Oct. 17, 2014) ...................... A632

Exhibit 7:  July 7-17, 2013 email chain between M. Berrada and R. Graves  [Filed under seal at A2476]

Exhibit 8:  August 1, 2013 email from M. Berrada  [Filed under seal at A2481]

Exhibit 9:  Plaintiff Mark Berrada's Answers to Defendant PNY Technologies, Inc.'s First Set of Interrogatories, dated May 22, 2017  [Filed under seal at A2484]

Exhibit 10:  July 7-22, 2013 emails between M. Berrada and R. Graves  [Filed under seal at A2500]

Exhibit 11:  August 9, 2013 emails between M. Berrada, L. Ping, and R. Graves  [Filed under seal at A2507]

Exhibit 12:  Excerpts from December 12, 2016 deposition transcript of Gadi Cohen  [Redacted.  Unredacted version at A2510] ...................................................................................... A647

Exhibit 13: Email from M. Berrada dated September 13, 2013 [Filed under seal at A2558]

Exhibit 14:  September 11-16, 2013 emails between, inter alia, M. Berrada and N. Mauro  [Filed under seal at A2561]

Exhibit 15:  Excerpts from May 18, 2016 deposition transcript of Heidi Stuto ................................................................................ A699

Exhibit 16:  Excerpts from December 13, 2016 deposition of Mark Ciano  [Redacted.  Unredacted version at A2566].................. A707

Exhibit 17:  Excerpts from December 14, 2016 deposition of Nicholas Mauro  [Redacted.  Unredacted version at A2576]... A728

Exhibit 18:  Excerpts from December 15, 2016 deposition of Suzanne Blanchette-Grigoletti................................................... A739

Exhibit 19:  Declaration of Mark Ciano, dated October 30, 2015 ............................................................................................. A751

Exhibit 20:  Affidavit of Mark Berrada, dated December 3, 2015 ............................................................................................. A756

Exhibit 21:  Declaration of Mark Ciano in Support of Motion to
Transfer, dated November 11, 2015 ......................................... A766

Exhibit 22:  Invoices and checks to Mark Berrada ................... A770

Exhibit 23:  Defendants' Deposition Exhibit 26, Form 1099-MISC
for 2013  [Filed under seal at A2596]

Exhibit 24:  Mark Berrada's Schedule C to IRS Form 1040 for 2013
[Filed under seal at A2598]

Exhibit 25:  Defendants' Deposition Exhibit 25, 1099-MISC for
2014 [Filed under seal at A2600]

Exhibit 26:  Defendants' Deposition Exhibit 28A, PNY's
organizational chart  [Filed under seal at A2602]

Exhibit 27:  Excerpts from the August 24, 2017 deposition of
Harvey Etter  [Redacted.  Unredacted version at A2622] ........ A793

Exhibit 28:  Document entitled "New Product Initiative – Weekly
Key Takeaways"  [Filed under seal at A2640]

Exhibit 29: Plaintiff's Deposition Exhibit 17, a presentation
entitled "Proposed categories October 2013"  [Filed under seal at
A2660]

## **VOLUME IV**

### (A816 to A1179)

Exhibit 30: Defendants' Deposition Exhibit 7, a PNY Mutual
Confidential and Non-Disclosure Agreement, entered into on
November 1, 2013  [Redacted.  Unredacted version at A2668]
............................................................................................. A816

Exhibit 31: emails dated November 14, 2013 between Mark
Berrada and various PNY employees  [Filed under seal at A2670]

Exhibit 32: Various emails  [Filed under seal at A2673]

Exhibit 33: November 14, 2013 calendar invite from Mark Berrada
[Redacted.  Unredacted version at A2691] ............................... A824

Exhibit 34: December 3, 2013 email and attachment from H. Stuto to M. Berrada  [Filed under seal at A2693]

Exhibit 35: December 18, 2013 calendar invite from M. Berrada to H. Stuto  [Filed under seal at A2715]

Exhibit 36: February 24-28, 2014 emails between H. Stuto and M. Berrada

Exhibit 37: March 9-11, 2014 emails between H. Stuto and M. Berrada  [Filed under seal at A2717]

Exhibit 38:  Excerpts from May 5, 2017 Deposition of Kelvin Kam ................................................................................. A833

Exhibit 39: July 11, 2014 emails between M. Berrada and S. Blanchette-Grigoletti ................................................. A838

Exhibit 40: Employment Application Form and Authorization to Conduct Background Check of Mark Berrada  [Filed under seal at A2719]

Exhibit 41: July 16, 2014 offer of employment to Mark Berrada ................................................................................. A842

Exhibit 42:  July 16, 2014 offer of employment to Mark Berrada with handwritten notes............................................. A845

Exhibit 43:  July 28, 2014 calendar invite from M. Berrada to M. Ciano ....................................................................... A848

Exhibit 44:  July 29, 2014 email from S. Blanchette-Grigoletti to L. Ziemba................................................................. A850

Exhibit 45:  July 29, 2014 email from S. Blanchette-Grigoletti to L. Ziemba with handwritten notes ................................ A852

Exhibit 46:  July 29, 2014 draft letter to Mark Berrada ........... A854

Exhibit 47:  July 30, 2014 draft letter to Mark Berrada ........... A857

Exhibit 48:  July 30, 2014 draft letter to Mark Berrada with handwritten notes.................................................................... A861

Exhibit 49:  July 31, 2014 draft letter to Mark Berrada with attached compensation plan and existing customer list ............ A864

Exhibit 50:  August 1, 2014 draft letter to Mark Berrada with attached compensation plan and existing customer list............ A869

Exhibit 51: October 5, 2014 email from M. Ciano to M. Berrada ................................................................................................ A874

Exhibit 52: October 15, 2014 invoice from Mark Berrada with handwritten notes.................................................................... A877

Exhibit 53: October 15, 2014 expense report from Mark Berrada and October 20, 2014 check made out to Mark Berrada ........... A879

Exhibit 54: October 21 to November 4, 2014 emails between M. Berrada and L. Britting ........................................................ A882

Exhibit 55:  October 16, 2014 email from M. Berrada to T. Gomez [Filed under seal at A2732]

Exhibit 56:  October 21, 2014 email from T. Gomez to M. Berrada and attachment  [Filed under seal at A2734]

Exhibit 57:  October 28-30, 2014 emails between M. Berrada and H. Stuto, and attached Sales Representative Agreement.......... A890

Exhibit 58:  November 11, 2014 email from M. Berrada to M. Ciano .................................................................................... A905

Exhibit 59: November 11, 2014 email from M. Berrada forwarded to Mark Berrada ...................................................... A909

Exhibit 60: November 11, 2014 email from M. Berrada forwarded to Mark Berrada  [Redacted.  Unredacted version at A2739] .. A913

Exhibit 61: November 12, 2014 email from M. Berrada to Mark Berrada  [Redacted.  Unredacted version at A2741]................ A916

Exhibit 62: November 12, 2014 email from H. Stuto to M. Berrada [Filed under seal at A2743]

Exhibit 63: November 19, 2014 email from H. Stuto to M. Berrada, with attachment ......................................................... A921

Exhibit 64: Excerpts from March 16, 2017 deposition of Jeffrey Olear  [Redacted.  Unredacted version at A2745].................... A936

Exhibit 65:  September 3, 2014 emails between M. Berrada and G. Cohen  [Filed under seal at A2754]

Exhibit 66:  September 25, 2014 email from J. Masterson to M. Berrada and G. Cohen  [Filed under seal at A2756]

Exhibit 67:  Inventory report for PNY  [Filed under seal at A2761]

Exhibit 68:  Compilation of emails forwarded from M. Berrada to Mark Berrada  [Filed under seal at A2769]

Exhibit 69:  Email from M. Berrada Mark Berrada  [Filed under seal at A2796]

Exhibit 70:  Compilation of sample documents downloaded by Mark Berrada  [Filed under seal at A2798]

Exhibit 71:  Excel spreadsheet  [Filed in native form in District Court]

Exhibit 72:  Plaintiff Mark Berrada's Response to Defendant PNY Technologies, Inc.'s Third Request for Production of Documents, dated May 1, 2017 ................................................................. A960

Exhibit 73: Respondent's Affidavit in Support of Motion for Order to Show Cause re: Modification/Establishment of Child Support, Martin v. Berrada, Case No. 09-DS-0491-SF (Or. Cir. Ct. July 8, 2013) ......................................................................... A967

Exhibit 74:  Respondent's Hearing Memorandum, Martin v. Berrada, Case No. 09-DS-0491-SF (Or. Cir. Ct. Mar. 4, 2014) ....................................................................................... A972

Exhibit 75: Affidavit in Support of Motion for Order for Telephonic Testimony, Martin v. Berrada, Case No. 09-DS-0491-SF (Or. Cir. Ct. Mar. 12, 2014) ................................................. A976

Exhibit 76: Decision in Martin v. Berrada, Case No. 09-DS-0491-SF (Or. Cir. Ct. Apr. 10, 2014) ................................................. A979

Exhibit 77: Respondent's Hearing Memorandum, Martin v. Berrada, Case No. 09-DS-0491-SF (Or. Cir. Ct. June 9, 2014) A982

Exhibit 78: Respondent's Affidavit in Objection to Petitioner's Form of the Supplemental Judgment re Child Support and Unreimbursed Expenses dated August 3, 2014 ....................... A989

Exhibit 79: Supplemental Judgment re: Child Support & Unreimbursed Expenses (Money Award) dated August 5, 2014 ............................................................................................ A1003

Exhibit 80: Respondent's Affidavit in Support of Motion for Order to Show Cause re: Modification of Child Support & Child Support Expenses dated March 20, 2015 ............................................ A1012

Exhibit 81: Psychological Evaluation of Mental Health Status, of Mark Berrada dated October 30, 2010 [Redacted. Unredacted version at A2868] ................................................... A1020

Exhibit 82: February 5, 2015 email between B. Varon and K. Smith [Filed under seal at A2874] ........................................ A1027

Exhibit 83: Demonstrative timeline of the events ................. A1029

Plaintiff's Response to Defendants' Local Civil Rule 56.1 Statement of Material Facts Not in Dispute, dated April 30, 2018 [Redacted. Full version at A2876] ............................................................................ A1031

Plaintiff's Local Civil Rule 56.1 Statement of Disputed Material Facts [Redacted. Full version at A2905] .................................................. A1121

Certification of Mark Berrada, dated April 30, 2018 [Redacted. Full version at A2956] ............................................................................ A1173

## <u>VOLUME V</u>

(A1180 to A1572)

Certification of Jonathan I. Nirenberg, dated April 30, 2018 ........... A1180

Exhibit A:  Relevant pages from deposition of Mark Berrada [Redacted.  Full version at A2962]......................................... A1187

Exhibit B:  Relevant pages from deposition of Gadi Cohen [Redacted. Full version at A3108]......................................... A1336

Exhibit C:  Relevant pages from deposition of Nicholas Mauro [Redacted. Full version at A3200]......................................... A1431

Exhibit D:  Relevant pages from deposition transcript of Mark Ciano  [Redacted.  Full version at A3249]............................ A1483

Exhibit E:  Relevant pages from deposition of Heidi Stuto ... A1521

Exhibit F:  Relevant pages from deposition of Kelvin Kam .. A1529

## <u>VOLUME VI</u>

### (A1573 to A1988)

Exhibit G:  Relevant pages from deposition of Jeffrey Olear [Redacted.  Full version at A3286]......................................... A1573

Exhibit H:  Relevant pages from deposition of Harvey Etter [Redacted.  Full version at A3323]......................................... A1612

Exhibit I:  Relevant pages from deposition of Blanchette-Grigoletti ........................................................................................... A1663

Exhibit J:  Series of documents produced by Mark Berrada in discovery  [Filed under seal at A3373]

Exhibit K:  PowerPoint presentation entitled "Proposed categories October 2013"  [Filed under seal at A3409]

Exhibit L:  Email chain ending with December 6, 2016 email from Tony Gomez to Mark Berrada and others  [Filed under seal at A3416]

Exhibit M:  Email chain ending with October 24, 2013 email from Nicholas Mauro to Mark Berrada  [Filed under seal at A3420]

Exhibit N:  February 24, 2014 email from Nicholas Mauro to Mark Berrada and others  [Filed under seal at A3425]

Exhibit O:  May 15, 2014 e-mail from Mark Berrada to Gadi Cohen ..................................................................................... A1691

Exhibit P:  Email chain ending with March 28, 2014 from Mark Berrada to Gadi Cohen and others  [Filed under seal at A3428]

Exhibit Q:  May 9, 2014 email from Tony Gomez to Mark Berrada and others  [Filed under seal at A3430]

Exhibit R:  Email chain ending with September 15, 2014 email from Gadi Cohen to Mark Berrada  [Filed under seal at A3431]

Exhibit S:  Email chain ending with September 19, 2014 email from Gadi Cohen to Mark Berrada  [Filed under seal at A3433]

Exhibit T:  September 16, 2014 email from Mark Berrada to Gadi Cohen and Mark Ciano .......................................................... A1701

Exhibit U:  Fully executed 2014 employment contract between PNY and Mark Berrada, dated July 16, 2014......................... A1703

Exhibit V:  Email chain ending with May 19, 2014 email from Mark Berrada to Nicholas Mauro and Doug DeMarco  [Filed under seal at A3434]

Exhibit W:  June 3, 2014 email from Mark Berrada to Gadi Cohen and others  [Filed under seal at A3495]

Exhibit X:  Email chain ending with March 28, 2014 email from Mark Berrada to Eric Pozin and Tony Gomez  [Filed under seal at A3496]

Exhibit Y:  Series of documents produced by Mark Berrada in discovery  [Filed under seal at A3498]

Exhibit Z:  Excel spreadsheet produced by Defendants in discovery [Filed under seal at A3512]

Exhibit AA:  Email chain ending with November 11, 2014 email from Mark Berrada to Mark Ciano .......................................... A1716

Exhibit AB:  Defendant PNY's Answer, Affirmative Defenses, and Counterclaims filed on October 20, 2015  [Omitted –copy at A100]

Exhibit AC:  Gadi Cohen's Answer, Affirmative Defenses, and Counterclaims filed on June 3, 2016  [Omitted - copy at A127]

Exhibit AD:  Defendants' Answer, Affirmative Defenses and Counterclaims filed on May 10, 2017  [Omitted - copy at A177]

Exhibit AE:  Mark Ciano's October 30, 2015 Declaration .... A1727

Exhibit AF is a copy of Mark Berrada's December 14, 2015Affidavit......................................................................... A1755

Exhibit AG:  Transcript of November 13, 2015 hearing on Mark Berrada's Motion to Shorten Time for PNY's Response to the Second Request for Production of Documents...................... A1824

Exhibit AH:  Emails between Seth E. Spitzer, Esq. and Kelvin Kam ending with email dated February 24, 2017 ................. A1836

Exhibit AI:  Letter from Seth E. Spitzer, Esq. to Kelvin Kam dated March 17, 2017....................................................................... A1841

Exhibit AJ:  Unsigned document entitled PNY Technologies, Inc. Terms and Conditions............................................................. A1843

Exhibit AK:  Printout from PNY's website, www.pny.com .. A1848

Exhibit AL:  Document obtained from the Securities Exchange Commission's website ........................................................... A1866

## **VOLUME VII**

(A1989 to A2364)

Exhibit AM:  Printout from DBK Electronics' website, www.dbk.com.hk.................................................................... A1989

Exhibit AN:  Affidavit of Kelly Hansen, Esq......................... A1992

Exhibit AO:  Email chain ending with email from Mark Berrada to Kelvin Kam and others dated October 23, 2013  [Filed under seal at A3515]

Exhibit AP:  Email chain ending with email from Nicholas Mauro to Mark Berrada dated September 3, 2014  [Filed under seal at A3518]

Exhibit AQ:  Email chain ending with email from Jeffrey Olear to Mark Berrada, dated September 3, 2014  [Filed under seal at A3520]

Exhibit AR:  Email chain ending with email from Tony Gomez to Mark Berrada and others, dated September 22, 2014  [Filed under seal at A3522]

Exhibit AS:  Microsoft Excel spreadsheet Defendants produced in discovery.  [Submitted to District Court in native format]

Exhibit AT:  Press Release SanDisk Corp. regarding a judgment in a lawsuit between SanDisk and PNY .................................... A2011

Exhibit AU: Transcript from September 1, 2016 hearing before the Hon. Leda Dunn Wettre, U.S.M.J. ......................................... A2015

Exhibit AV:  Relevant pages from the deposition of Joseph Vitorino  [Redacted.  Full version at A3524] ......................... A2048

Defendants' Response to Plaintiffs' Local Civil Rule 56.1 Supplemental Statement of Disputed Material Facts  [Redacted.  Full version at A3536] ................................................................................................. A2062

Supplemental Declaration of James S. Richter in Further Support of Defendants' Motion for Summary Judgment ................................... A2183

Exhibit 84:  Excerpts from the December 12, 2016 and June 14, 2017 deposition transcripts of Gadi Cohen  [Redacted.  Full version at A3656] ................................................................. 2187A

Exhibit 85:  Excerpts from the December 16, 2016 and August 22, 2017 deposition transcripts of Mark Berrada  [Redacted.  Full version at A3704] ................................................................. 2236A

Exhibit 86:  Excerpts from the December 13, 2016 deposition transcript of Mark Ciano  [Redacted.  Full version at A3716] ............................................................................................ 2249A

Exhibit 87:  March 9-10, 2014 emails between R. Graves and M. Berrada  [Filed under seal at A3744]

Exhibit 88:  Excerpts from May 18, 2016 deposition transcript of Heidi Stuto ............................................................................ A2280

Exhibit 89:  December 18, 2013 meeting request from M. Berrada to H. Stuto  [Filed under seal at A3746]

Exhibit 90: Excerpts from December 15, 2016 deposition transcript of Suzanne Blanchette-Grigoletti ........................................... A2294

Exhibit 91:  July 16, 2014 emails between M. Berrada, D. Marciano, and A. Staton  [Filed under seal at A3748]

Exhibit 92:  Transcript of November 13, 2015 telephonic hearing held before the Honorable James M. Hopkins  [Omitted – copy at A1825]

Exhibit 93:  Excerpts from March 16, 2017 deposition transcript of Jeffrey Olear  [Redacted.  Full version at A3750] ................. A2309

Exhibit 94:  Excerpts from July 26, 2017 deposition transcript of Joseph Vitorino  [Filed under seal at A3761]

Exhibit 95:  Defendants' Response to Plaintiff's Statement of Claim, dated November 25, 2015 ........................................... A2323

Exhibit 96:  Excerpts from Defendants PNY Technologies, Inc.'s Response to Plaintiff's Request for Production of Documents, dated December 14, 2015, for Request Nos. 16, 18, and 19 .. A2326

Exhibit 97:  Excerpt from transcript of January 13, 2016 discovery hearing before the Honorable James M. Hopkins .................. A2331

Exhibit 98:  Excerpts from Plaintiff Mark Berrada's Response to Defendants, PNY Technologies, Inc. and Gadi Cohen's, Request for Production of Documents (SET ONE), dated January 19, 2016, for Request Nos. 1-5, 9, 45, 66, and 68 .................................. A2334

Exhibit 99:  Excerpt of Defendant PNY Technologies, Inc.'s First Set of Requests for Admission, dated April 25, 2017, for Request for Admission No. 24 ........................................................... A2341

Exhibit 100:  Letter from James S. Richter to the Honorable Leda D. Wettre, dated February 2, 2018 ......................................... A2344

Exhibit 101:  June 30, 2014 email and attachment from N. Mauro to M. Berrada  [Filed under seal at A3765]

Exhibit 102:  October 2, 2014 email and attachment from N. Mauro to M. Berrada  [Filed under seal at A3786]

Exhibit 103:  Excerpts from December 14, 2016 deposition transcript of Nicholas Mauro  [Redacted.  Full version at A3802] ............................................................................................ A2354

Exhibit 104:  Excel file containing financial data for PNY's accessory product lines from January 1, 2012 through August 31, 2013 [Filed in native form in District Court]

## VOLUME VIII

## FILED UNDER SEAL

(A2365 to A2755)

Defendants' Statement of Material Facts Not in Dispute in Support of Their Motion for Summary Judgment, filed March 22, 2018 ...... A2365

Unreadcted copies of Exhibits to Declaration of James S. Richter in Support of Defendants' Opposition to Plaintiff's Motion for Leave to File an Amended Complaint

Exhibit 4:  Excerpts from the December 16, 2016, June 1, 2017 and August 22, 2017 deposition transcripts of Mark Berrada A2395

Exhibit 7:  July 7-17, 2013 email chain between M. Berrada and R. Graves ............................................................................. A2476

Exhibit 8:  August 1, 2013 email from M. Berrada ................ A2481

Exhibit 9:  Plaintiff Mark Berrada's Answers to Defendant PNY Technologies, Inc.'s First Set of Interrogatories, dated May 22, 2017 ........................................................................ A2484

Exhibit 10:  July 7-22, 2013 emails between M. Berrada and R. Graves .................................................................................. A2500

Exhibit 11:  August 9, 2013 emails between M. Berrada, L. Ping, and R. Graves.......................................................... A2507

Exhibit 12:  Excerpts from December 12, 2016 deposition transcript of Gadi Cohen.......................................................... A2510

Exhibit 13:  Email from M. Berrada dated September 13, 2013 ............................................................................... A2558

Exhibit 14:  September 11-16, 2013 emails between, inter alia, M. Berrada and N. Mauro .......................................... A2561

Exhibit 16:  Excerpts from December 13, 2016 deposition of Mark Ciano...................................................................... A2566

Exhibit 17:  Excerpts from December 14, 2016 deposition of Nicholas Mauro ..................................................... A2586

Exhibit 23:  Defendants' Deposition Exhibit 26, Form 1099-MISC for 2013................................................................... A2596

Exhibit 24:  Mark Berrada's Schedule C to IRS Form 1040 for 2013 .............................................................................. A2598

Exhibit 25:  Defendants' Deposition Exhibit 25, 1099-MISC for 2014 .................................................................... A2600

Exhibit 26:  Defendants' Deposition Exhibit 28A, PNY's organizational chart ............................................................. A2602

Exhibit 27:  Excerpts from the August 24, 2017 deposition of Harvey Etter.......................................................... A2622

Exhibit 28:  Document entitled "New Product Initiative – Weekly Key Takeaways".................................................... A2640

Exhibit 29: Plaintiff's Deposition Exhibit 17, a presentation entitled "Proposed categories October 2013"......................... A2660

Exhibit 30:  Defendants' Deposition Exhibit 7, a PNY Mutual Confidential and Non-Disclosure Agreement, entered into on November 1, 2013 .................................................................. A2668

Exhibit 31: emails dated November 14, 2013 between Mark Berrada and various PNY employees ..................................... A2670

Exhibit 32: Various emails ..................................................... A2673

Exhibit 33: November 14, 2013 calendar invite from Mark Berrada ............................................................................. A2691

Exhibit 34: December 3, 2013 email and attachment from H. Stuto to M. Berrada ........................................................................ A2693

Exhibit 35:  December 18, 2013 calendar invite from M. Berrada to H. Stuto ............................................................................. A2715

Exhibit 37: March 9-11, 2014 emails between H. Stuto and M. Berrada.................................................................................. A2717

Exhibit 40: Employment Application Form and Authorization to Conduct Background Check of Mark Berrada ....................... A2719

Exhibit 51:  October 5, 2014 email from M. Ciano to M. Berrada ........................................................................................... A2730

Exhibit 55:  October 16, 2014 email from M. Berrada to T. Gomez ........................................................................................... A2732

Exhibit 56:  October 21, 2014 email from T. Gomez to M. Berrada and attachment ........................................................................ A2734

Exhibit 60:  November 11, 2014 email from M. Berrada forwarded to Mark Berrada ..................................................................... A2739

Exhibit 61:  November 12, 2014 email from M. Berrada to Mark Berrada.................................................................................. A2741

Exhibit 62: November 12, 2014 email from H. Stuto to M. Berrada ........................................................................................... A2743

Exhibit 64: Excerpts from March 16, 2017 deposition of Jeffrey Olear.......................................................................................... A2745

Exhibit 65: September 3, 2014 emails between M. Berrada and G. Cohen ................................................................................... A2754

## **VOLUME IX**

## **FILED UNDER SEAL**

(A2756 to A3107)

Exhibit 66: September 25, 2014 email from J. Masterson to M. Berrada and G. Cohen............................................................ A2756

Exhibit 67: Inventory report for PNY ................................... A2761

Exhibit 68: Compilation of emails forwarded from M. Berrada to Mark Berrada ........................................................................... A2769

Exhibit 69: Email from M. Berrada Mark Berrada ............... A2796

Exhibit 70: Compilation of sample documents downloaded by Mark Berrada ........................................................................ A2798

Exhibit 81: Psychological Evaluation of Mental Health Status, of Mark Berrada dated October 30, 2010 ................................... A2868

Exhibit 82: February 5, 2015 email between B. Varon and K. Smith ................................................................................... A2874

Plaintiff's Response to Defendants' Local Civil Rule 56.1 Statement of Material Facts Not in Dispute, dated April 30, 2018........................ A2876

Plaintiff's Local Civil Rule 56.1 Statement of Disputed Material Facts ...................................................................................... A2905

Certification of Mark Berrada, dated April 30, 2018 ....................... A2956

Exhibits to Certification of Jonathan I. Nirenberg, dated April 30, 2018

Exhibit A: Relevant pages from deposition of Mark Berrada ............................................................................ A2962

# VOLUME X

## FILED UNDER SEAL

(A3108 to A3511)

Exhibit B:  Relevant pages from deposition of Gadi Cohen .. A3108

Exhibit C:  Relevant pages from deposition of Nicholas Mauro. .............................................................................. A3200

Exhibit D:  Relevant pages from deposition transcript of Mark Ciano ..................................................................... A3249

Exhibit G:  Relevant pages from deposition of Jeffrey Olear A3286

Exhibit H:  Relevant pages from deposition of Harvey Etter  A3323

Exhibit J:  Series of documents produced by Mark Berrada in discovery ................................................................. A3373

Exhibit K:  PowerPoint presentation entitled "Proposed categories October 2013" ....................................................... A3409

Exhibit L:  Email chain ending with December 6, 2016 email from Tony Gomez to Mark Berrada and others .............................. A3416

Exhibit M:  Email chain ending with October 24, 2013 email from Nicholas Mauro to Mark Berrada .......................................... A3420

Exhibit N:  February 24, 2014 email from Nicholas Mauro to Mark Berrada and others ................................................. A3425

Exhibit P:  Email chain ending with March 28, 2014 from Mark Berrada to Gadi Cohen and others ......................................... A3428

Exhibit Q:  May 9, 2014 email from Tony Gomez to Mark Berrada and others ............................................................. A3430

Exhibit R:  Email chain ending with September 15, 2014 email from Gadi Cohen to Mark Berrada ......................................... A3431

Exhibit S:  Email chain ending with September 19, 2014 email from Gadi Cohen to Mark Berrada ......................................... A3433

Exhibit V:  Email chain ending with May 19, 2014 email from Mark Berrada to Nicholas Mauro and Doug DeMarco .......... A3434

Exhibit W:  June 3, 2014 email from Mark Berrada to Gadi Cohen and others ............................................................................. A3495

Exhibit X:  Email chain ending with March 28, 2014 email from Mark Berrada to Eric Pozin and Tony Gomez ....................... A3496

Exhibit Y:  Series of documents produced by Mark Berrada in discovery ............................................................................... A3498

## <u>VOLUME XI</u>

## <u>FILED UNDER SEAL</u>

### (A3512 to A3808)

Exhibit Z:  Excel spreadsheet produced by Defendants in discovery .............................................................................. A3512

Exhibit AO:  Email chain ending with email from Mark Berrada to Kelvin Kam and others dated October 23, 2013 ................... A3515

Exhibit AP:  Email chain ending with email from Nicholas Mauro to Mark Berrada dated September 3, 2014 ............................. A3518

Exhibit AQ:  Email chain ending with email from Jeffrey Olear to Mark Berrada, dated September 3, 2014 ............................... A3520

Exhibit AR:  Email chain ending with email from Tony Gomez to Mark Berrada and others, dated September 22, 2014 ............ A3522

Exhibit AV:  Relevant pages from the deposition of Joseph Vitorino ............................................................................... A3524

Defendants' Response to Plaintiffs' Local Civil Rule 56.1 Supplemental Statement of Disputed Material Facts .............................................. A3536

Exhibits to Supplemental Declaration of James S. Richter in Further Support of Defendants' Motion for Summary Judgment

Exhibit 84:  Excerpts from the December 12, 2016 and June 14, 2017 deposition transcripts of Gadi Cohen ........................... A3656

Exhibit 85:  Excerpts from the December 16, 2016 and August 22, 2017 deposition transcripts of Mark Berrada ......................... A3704

Exhibit 86:  Excerpts from the December 13, 2016 deposition transcript of Mark Ciano........................................................ A3716

Exhibit 87:  March 9-10, 2014 emails between R. Graves and M. Berrada................................................................. A3744

Exhibit 89:  December 18, 2013 meeting request from M. Berrada to H. Stuto.............................................................. A3746

Exhibit 91:  July 16, 2014 emails between M. Berrada, D. Marciano, and A. Staton ....................................................... A3748

Exhibit 93:  Excerpts from March 16, 2017 deposition transcript of Jeffrey Olear ......................................................... A3750

Exhibit 94:  Excerpts from July 26, 2017 deposition transcript of Joseph Vitorino ...................................................... A3761

Exhibit 101:  June 30, 2014 email and attachment from N. Mauro to M. Berrada ......................................................... A3765

Exhibit 102:  October 2, 2014 email and attachment from N. Mauro to M. Berrada  .......................................................... A3786

Exhibit 103:  Excerpts from December 14, 2016 deposition transcript of Nicholas Mauro ................................................. A3802

Date Filed: 05/13/2019      Page: 63      Document: 003113236565      Case: 19-1152

Jonathan I. Nirenberg (JIN 032431998)
Rabner Baumgart Ben-Asher & Nirenberg, P.C.
52 Upper Montclair Plaza
Upper Montclair, New Jersey 07043-1391
Tel: (973) 744-4000
Fax: (973) 783-1524
JNirenberg@njemploymentlawfirm.com
Attorneys for Plaintiff Mark Berrada

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK BERRADA, <br><br> Plaintiff, <br><br> v. <br><br> GADI COHEN and PNY TECHNOLOGIES, INC., a Delaware corporation, <br><br> Defendants. | Civil Action No. 2:16-cv-00574 (SDW-LDW) <br><br> Judge: The Hon. Susan D. Wigenton, U.S.D.J. <br><br> **NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT** |

**NOTICE** is hereby given that Plaintiff, Mark Berrada, appeals to the United States Court of Appeals for the Third Circuit from three Orders:

1. The September 27, 2018 Order granting Defendants' Motion for Summary Judgment (Dkt. No. 307);

2. The April 24, 2017 Opinion/Order denying Plaintiff leave to amend his Complaint to assert a retaliation claim under the Fair Labor Standards Act (Dkt. No. 186); and

3. The December 5, 2017 Opinion/Order denying reconsideration of the portion of the April 24, 2017 Opinion/Order denying Plaintiff leave to amend his Complaint to assert a retaliation claim under the Fair Labor Standards Act (Dkt. No. 236).

A 1

Case: 19-1152     Document: 003113236565     Page: 64     Date Filed: 05/13/2019

The above-referenced Orders became final on December 20, 2018, upon the District Court's entry of a Stipulation and Judgment dismissing Defendants Gadi Cohen and PNY Technologies, Inc.'s Counterclaims with prejudice.

Plaintiff/Appellant:                    Mark Berrada

Attorney for Plaintiff/Appellant:       Rabner Baumgart Ben-Asher & Nirenberg, P.C.
                                        52 Upper Montclair Plaza
                                        Upper Montclair, New Jersey 07043-1391
                                        Tel: (973) 744-4000
                                        JNirenberg@njemploymentlawfirm.com

Dated:   January 17, 2019               By: /s Jonathan I. Nirenberg
                                            Jonathan I. Nirenberg

A 2

Case: 19-1152     Document: 00311323665     Page: 65     Date Filed: 05/13/2019

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARK BERRADA, | Civil Action No. |
| Plaintiffs, | 16-574 (SDW) (LDW) |
| v. | MEMORANDUM OPINION AND ORDER |
| GADI COHEN, PNY TECHNOLOGIES, INC., | |
| Defendants. | |

**LEDA DUNN WETTRE, U.S.M.J.**

Before the Court is plaintiff Mark Berrada's motion under Federal Rule of Civil Procedure 15(a)(2) for leave to file an Amended Complaint to add new factual allegations, remove claims for unpaid wages asserted under Florida common law, and include new claims of fraud, promissory estoppel, quantum meruit, and for violations of the New Jersey Wage Payment Act, the New Jersey Wage and Hour Law, and the New Jersey Independent Sales Representative Act. (ECF No. 161). By supplemental brief, plaintiff also moves to add a claim of retaliation under the Fair Labor Standards Act ("FLSA"). (ECF No. 173). Defendants Gadi Cohen and PNY Technologies oppose the motion. (ECF Nos. 163, 174). For the reasons set forth below, plaintiff's motion is **GRANTED** in part, as to all amendments except for the proposed FLSA retaliation claim, and is **DENIED** in part, as to the FLSA retaliation claim only.[1]

---

[1]     This motion was decided without oral argument pursuant to Federal Rule of Civil Procedure 78(b).

Case: 19-1152    Document: 00311323236565    Page: 66    Date Filed: 05/13/2019

## BACKGROUND

Plaintiff filed this action in state court in Florida in September 2015. (ECF No. 1-2). In October 2015, defendants removed the action to the United States District Court for the Southern District of Florida. (ECF No. 1). In February 2016, it was transferred here. (ECF No. 88).

Plaintiff's Complaint, which has not previously been amended, essentially alleges that defendants PNY and Gadi Cohen failed to compensate him fully for services he provided to PNY. PNY is a technology company that manufactures and sells electronics and electronics accessories. Cohen is its founder and CEO, among other titles. (ECF No. 1-2 ("Compl.") ¶ 10). Plaintiff claims experience in the development, marketing, and sales of "computer peripheral and electronics accessory" products. (*Id.* ¶ 8).

Plaintiff alleges that after being approached by defendant Cohen to start providing services to PNY, he entered into two contracts with PNY: an oral one, in September 2013 (the "2013 contract") and a written one, in July 2014 (the "2014 contract"). Under these contracts, plaintiff allegedly would receive, *inter alia*, percentages of sales proceeds and gross profits for certain PNY products in exchange for developing and launching new products, meeting with retailers, and other services. Plaintiff alleges that defendants have not compensated him in accordance with these agreements. (*Id.* ¶¶ 12-18). He asserts claims of breach of contract, unjust enrichment, unpaid wages under Florida law, and FLSA violations for failure to pay wages and overtime compensation. (*Id.* ¶¶ 21-60).

PNY counterclaims for breach of oral contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, and fraudulent and negligent misrepresentation. (ECF No. 8 (Counterclaim) ¶¶ 11-49). In support of these counterclaims, PNY

2

Case: 19-1152     Document: 00311323б565     Page: 67     Date Filed: 05/13/2019

alleges that plaintiff failed to source and distribute shredders for PNY and manage PNY's portable power business, as promised. Defendants seek to recover the resulting business losses allegedly suffered. (*Id.* ¶¶ 4-10).

Plaintiff filed the instant motion to amend the Complaint on October 10, 2016. (ECF No. 161). At that time, the deadline set by the Pretrial Scheduling Order to seek to amend pleadings was October 14, 2016, and fact discovery was to be completed by December 31, 2016. (ECF No. 130). In February 2017, while the motion was *sub judice*, plaintiff sought leave to file a second motion to amend. (ECF No. 171). The Court allowed supplemental briefing on the proposed further amendments sought by plaintiff. (ECF Nos. 172, 173, 174).

Plaintiff's motion seeks to amend his complaint to add claims of fraud, promissory estoppel, quantum meruit as to both alleged contracts, and an FLSA retaliation claim. (*See* ECF No. 173-2 (Proposed Amended Complaint ("PAC")) ¶¶ 23-30, 46-51, 56-63). It further seeks to substitute New Jersey wage claims for those previously pleaded under Florida law. (*Id.* ¶¶ 64-68, 79-87).

The PAC also includes additional factual allegations not contained in the initial complaint. These concern defendants' alleged representations concerning his prospective employment at PNY (*Id.* ¶¶ 24-26), as well as revised allegations concerning the monies to which plaintiff allegedly was entitled under the 2013 contract. In the initial Complaint, plaintiff alleged that he was entitled under the 2013 oral contract to receive "5% of the sales proceeds of Accessories including new products that were sourced, developed, and/or managed by [plaintiff]" and "25% of the gross profit from the worldwide sale of such products." (Compl. ¶ 13). In contrast, the PAC alleges that under the 2013 contract, plaintiff was entitled to "5% of the worldwide gross sales of all accessories . . .

3

Case: 19-1152     Document: 003113236565     Page: 68     Date Filed: 05/13/2019

including existing products and new products that were managed, sourced, developed, . . .

designed, marketed and/or sold by [plaintiff] or under his leadership . . . *for as long as those*

*existing and new products are sold*" and "25% of the gross profit from the worldwide sales of such

existing and new products *for so long as they are sold*." (PAC ¶ 12 (emphasis added)).

Defendants oppose the motion, arguing that plaintiff unduly delayed in filing the motion,

the motion is prejudicial, and plaintiff filed it in bad faith. (ECF Nos. 163 at 9-14). They also

argue that plaintiff's allegations about his commissions under the 2013 contract, claims regarding

the 2014 contract, and FLSA retaliation claim, are futile. (ECF Nos. 163 at 14-18 and 174).

## DISCUSSION

### I.    Applicable Law

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court should "freely

give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend is

liberally granted in light of "the principle that the purpose of pleading is to facilitate a proper

decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks

omitted). Leave to amend should be granted unless there is "substantial or undue prejudice, . . .

bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the

deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*,

1 F.3d 1406, 1414 (3d Cir. 1993).

Regarding futility, a proposed amendment is futile if it would fail to state a claim upon

which relief could be granted, in accordance with "the same standard of legal sufficiency as applies

under Rule 12(b)(6)." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "To survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

A 6

Case: 19-1152    Document: 003113236565    Page: 69    Date Filed: 05/13/2019

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It is defendants' burden to show the proposed amendments' futility. *See Pharm. Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000). In evaluating a claim under the Rule 12(b)(6) standard, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint" and "matters of public record of which the court can take judicial notice." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (internal quotation marks omitted).

The Court will address the proposed factual allegations and claims discussed in plaintiff's initial motion to amend first, and then the supplemental proposed FLSA retaliation claim.

## II. Analysis of Initial Motion to Amend

### A. Undue Delay, Prejudice, and Bad Faith

Defendants argue that plaintiff unduly delayed in filing the motion and allowing plaintiff to file the PAC would prejudice them, for the following reasons. First, plaintiff was aware of the new allegations in the PAC when he filed the original complaint over a year ago. Second, the PAC will expand the scope of discovery, prevent the parties from meeting the fact discovery deadline, and force defendants to develop new litigation strategies. (ECF No. 163 at 9-13).

The Court finds that plaintiff did not unduly delay in filing his motion to amend and that allowing the proposed amendments would not substantially prejudice defendants. Plaintiff moved to amend on October 10, 2016, and the Court's Scheduling Order then required motions to amend to be filed by October 14, 2016. (ECF No. 130). As long as the amendment is timely sought

Case: 19-1152     Document: 003113236565     Page: 70     Date Filed: 05/13/2019

within a deadline set by the Court, it is difficult to prevail on an assertion of undue delay. *See,*
*e.g.*, *Astrazeneca AB v. Perrigo Co. PLC*, Civ. A. No. 15-1057 (MLC)(TJB), 2015 WL 8483298,
at *4 (D.N.J. Dec. 8, 2015); *Ali v. DOC*, Civ. A. No. 08-2425 (FSH), 2008 WL 5111274, at *4
(D.N.J. Nov. 25, 2008).

While defendants contend that certain of the facts upon which the new claims are based
were likely known to Plaintiff earlier than when he moved to amend, it is not unusual or *per se*
prejudicial for a party to alter his claims during the course of litigation. Plaintiff suggests that
while he may have known the facts underlying the fraud claim earlier, once it became clear that
New Jersey law would apply (late in the action and upon transfer), he then found that New Jersey
has a more liberal cause of action than Florida for fraud in the employment context. (ECF No. 166
at 7-8). Consequently, plaintiff did not unduly delay in seeking to add fraud-related claims under
New Jersey law and replace Florida law claims with claims under New Jersey law after transfer of
the action to this Court.

Moreover, plaintiff's new claims and allegations would not alter the scope of discovery in
a significant way. Most of the discovery on the new claims of note (fraud, promissory estoppel)
will likely concern defendant Cohen's representations to plaintiff, which has been the subject of
discovery from the inception of this case. Regardless, the parties had not completed fact discovery
at the time the motion was filed, and the short extension of that period the Court gave recently
(ECF No. 185) should be sufficient to complete any necessary discovery as to the new claims. *See,*
*e.g.*, *High 5 Games, LLC v. Marks*, Civ. A. No. 13-7161 (JMV)(MF), 2017 WL 349375, at *4-5
(D.N.J. Jan. 24, 2017) (finding no undue delay or prejudice where discovery was ongoing, no
dispositive motions had been filed, and the addition of some discovery would not realistically

Case: 19-1152     Document: 00311323236565     Page: 71     Date Filed: 05/13/2019

delay resolution of the case since it was far from conclusion).[2] Allowing plaintiff to file the PAC will not prejudice defendants' ability to defend themselves in this action. *See In re Bristol-Myers Squibb Sec. Litig.*, 228 F.R.D. 221, 228 (D.N.J. 2005) ("'Prejudice' . . . involves serous impairment of the nonmovant's ability to present its case."). Nor will the filing of the PAC substantially delay resolution of the action as it necessitates only a brief extension of fact discovery, which the Court took into account in recently extending fact discovery through June 15, 2017. (ECF No. 185).

Finally, defendants argue that plaintiff filed the PAC in bad faith. They assert that before seeing the PAC, they had requested discovery that would have been responsive to some of the PAC's new allegations, but plaintiff objected to the request, pointing to a generalized objection.[3] This objection, defendants argue, combined with the delayed filing of the PAC and plaintiff's scant reasoning in his opening brief, prejudiced them and demonstrates bad faith. (ECF No. 163 at 13-14). These arguments are unpersuasive. Defendants' assertions that plaintiff failed to provide discovery on claims that had not yet been pleaded are insufficient to demonstrate bad faith, particularly given the Court's findings that there was no undue delay or prejudice in plaintiff's seeking to amend the Complaint. *See Diallo v. Alo Enters. Corp.*, Civ. A. No. 12-3762 (AET), 2013 WL 3772827, at *3 (D.N.J. July 17, 2013) ("Although delay itself can be evidence of bad faith justifying the denial of a motion to amend, there generally must also be some extrinsic

---

[2]    All of the cases on which defendants rely to show undue delay and prejudice here concerned motions to amend filed at a much later stage in the litigation. *See, e.g.*, *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 648, 654-55 (3d Cir. 1998); *Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 74 (3d Cir. 1994); *In re Bristol-Myers Squibb Sec. Litig.*, 228 F.R.D. at 228; *Duffy v. Charles Schwab & Co.*, Civ. A. No. 98-4595 (MLC), 2001 WL 1104689, at *1-3 (D.N.J. Sept. 4, 2004).
[3]    Defendants' relevant document requests concerned plaintiff's efforts to enter into a business relationship, his classification as an employee versus an independent contractor, and evidence of his matrimonial or child support proceedings. (ECF Nos. 163-5, 163-6).

Case: 19-1152    Document: 00311323236565    Page: 72    Date Filed: 05/13/2019

evidence to indicate that a litigant acted in bad faith before a motion to amend will be denied on this ground."). Furthermore, while plaintiff's opening brief was indeed *pro forma* in nature, that does not constitute bad faith justifying denial of leave to amend under these circumstances. Therefore, the Court does not find that plaintiff acted in bad faith in seeking to amend the Complaint.

### B. Futility

Defendants argue that plaintiff's new allegations regarding his commissions under the 2013 contract are barred by judicial estoppel and therefore futile. Specifically, they argue that plaintiff admitted during a January 2016 discovery hearing before the Florida district court that his contract with PNY contained no provision regarding future wages. They also point to plaintiff's most recent FLSA statement of claim filed in the Florida district court, which calculates unpaid wages and overtime compensation for the dates of plaintiff's relationship with PNY only. (ECF No. 163 at 4-5, 15-16). Defendants argue that these positions are inconsistent with the PAC's allegation that plaintiff is entitled to future commissions under the 2013 contract, triggering judicial estoppel.

Although the January 2016 hearing transcript and FLSA statement of claim are outside the allegations in plaintiff's complaint, the Court may take judicial notice of those public filings for purposes of determining whether the proposed allegations regarding the 2013 contract would be barred by judicial estoppel. (ECF Nos. 82-1 (Tr.), 83-1 (FLSA Statement of Claim)). *See New Hampshire v. Maine*, 532 U.S. 742 (2001); *In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*, Civ. A. Nos. 05-1151, 05-2367 (SRC), 2011 WL 3444199, at *3 (D.N.J. Aug. 8, 2011); *see also Orabi v. Attorney Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014).

Judicial estoppel "is a judge-made doctrine that seeks to prevent a litigant from asserting

A 10

Case: 19-1152     Document: 003113236565     Page: 73     Date Filed: 05/13/2019

a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). *See, e.g., Scarano v. Cent. R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953) (holding plaintiff could not obtain damages from employer for a work-related injury on the grounds that he was incapacitated and then bring a separate action for reinstatement under the terms of a collective bargaining agreement). "[It] applies only where a litigant has taken a legal position that is 'clearly inconsistent' with an earlier position, has succeeded in persuading a court in accepting the earlier position and has or would derive an unfair advantage from having courts accept the inconsistent positions." *In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*, 2011 WL 3444199, at *3 (quoting *New Hampshire*, 532 U.S. at 750).

Here, it does not appear judicial estoppel applies to plaintiff's new allegations regarding the 2013 contract. The January 2016 hearing transcript reveals that the issue before the Florida court at the hearing was whether plaintiff would be entitled to future wages based on the alleged FLSA violations because he expected to work for PNY until retirement, and was therefore entitled to discovery on that information. Plaintiff conceded during the hearing that the 2014 written contract was "silent" as to whether he was entitled to a future share in in PNY profits. The Florida district court ruled that plaintiff was not entitled to discovery on future wages, without prejudice, because plaintiff provided no authority showing he would be entitled to future wages under the FLSA. (ECF No. 82-1 at 8-14). Plaintiff then filed an amended FLSA statement of claim estimating his unpaid wages and overtime compensation, for 2013-2015 only. (ECF No. 83-1).

In the PAC, plaintiff asserts that he was promised commissions on certain PNY products for as long as they are sold under the 2013 oral contract (which apparently would include products

Case: 19-1152   Document: 00311323565   Page: 74   Date Filed: 05/13/2019

sold after plaintiff's relationship with PNY ended).  This allegation is not inconsistent with the positions plaintiff took at the January 2016 hearing or in his amended FLSA statement of claim. The primary issue at the January 2016 hearing was whether plaintiff would be entitled to damages for unpaid future wages based on his claims under FLSA, not the 2013 contract.  The fact that he admitted during the hearing that the 2014 written contract is silent as to future wages does not controvert his assertion now that he is entitled to future commissions on certain PNY products under the 2013 *oral* contract.  Similarly, the updated FLSA statement of claim concerned plaintiff's alleged unpaid wages and overtime compensation as to his FLSA claims, not his alleged commissions under the 2013 contract.  Furthermore, the Florida court stopped short of ruling that plaintiff could *never* argue that he is entitled to future wages of some kind, but denied plaintiff's motion to compel discovery on that issue without prejudice.  Accordingly, plaintiff's allegations do not appear to be futile based on judicial estoppel.

Defendants also argue that plaintiff's alleged claims as to the 2014 contract are futile because the parties never entered into the 2014 contract.  (ECF No. 163 at 17).  But whether the parties entered into the 2014 contract is hotly disputed in this case, and not an issue to be decided on a futility analysis where the allegations of the PAC must be accepted as true. *See C.I.N. Const., LLC v. Hunt Const. Grp., Inc.*, Civ. A. No. 08-5810 (SDW) (MCA), 2009 WL 2998965, at *15 (D.N.J. Sept. 18, 2009) (rejecting futility arguments based on "disputed factual matters").  The Court cannot find futility as to claims concerning the 2014 contract at this time.

## III.   Analysis of Proposed FLSA Retaliation Claim

By supplemental brief, plaintiff also seeks to add a claim of retaliation under the FLSA. (ECF No. 173).   He asserts in the brief that Cohen, when questioned at deposition about the

Case: 19-1152     Document: 00311323656565     Page: 75     Date Filed: 05/13/2019

counterclaims, stated that plaintiff "sued us, so we have to reply" and the counterclaims were "a strategy we worked out with counsel." (*Id.* at 5-6). Plaintiff argues that these statements demonstrate that the counterclaims were brought with a retaliatory motive. He also asserts that many of the facts underlying the counterclaims are false, based on quotes from Cohen's deposition. (*Id.* at 5-7).

Defendants assert in response that the proposed FLSA retaliation claim is futile because plaintiff was no longer working for PNY when PNY brought its counterclaims, and is therefore not protected by the FLSA's retaliation provision. In any event, they argue, counterclaims (especially compulsory counterclaims) cannot form a basis for an FLSA retaliation claim because a counterclaim is not, "as a matter of law," an adverse employment action. (ECF No. 174 at 2-5). They further contend that even if a counterclaim could form a basis for a retaliation claim, it must be "baseless" to be considered retaliatory, and PNY's counterclaims are not baseless. (*Id.* at 5-10).

Under the FLSA, it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. § 215(a)(3). This provision "'must not be interpreted or applied in a narrow, grudging manner.'" *Brock v. Richardson*, 812 F.2d 121, 124 (3d Cir. 1987) (quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 312 U.S. 590, 597 (1944)). To state a claim for FLSA retaliation, plaintiff must "plead[] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence . . . [that] the employer took an adverse employment action against [him]." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (discussing pleading standard for Title VII

11

Case: 19-1152     Document: 003113236565     Page: 76     Date Filed: 05/13/2019

retaliation claims); *see also Shakib v. Back Bay Rest. Grp., Inc.*, Civ. A. No. 10-4564 (DMC), 2011 WL 4594654, at \*7 (D.N.J. Sept. 30, 2011) (applying same standard to FLSA retaliation claims). An adverse employment action "covers . . . employer actions that would have been materially adverse to a reasonable employee or job applicant." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (discussing Title VII antiretaliation provision).   In the context of *Burlington*, that meant "that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.*; *see also Stewart v. Pemberton Twp.*, Civ. A. No. 14-6810 (RBK)(AMD), 2015 WL 5164717, at \*4 (D.N.J. Sept. 2, 2015) (applying *Burlington* standard to FLSA retaliation claim).

Defendants argue initially that plaintiff is not protected by the FLSA because he was not working for PNY at the time PNY brought its counterclaims.  They rely on a District of Columbia case stating that a former employee "does not fit within the group of people *Burlington* seeks to protect." *Gross v. Akin, Gump, Strauss, Hauer & Feld, LLP*, 599 F. Supp. 2d 23, 33 (D.D.C. 2009).  The Court disagrees.  The Supreme Court has held that the term "employees," as used in the antiretaliation provision of Title VII, includes former employees. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997).  And although the Third Circuit has not addressed this issue, the Fourth Circuit has persuasively held that *Robinson*'s holding applies to the FLSA in the context of a retaliation claim, observing "the almost uniform practice of courts in considering the authoritative body of Title VII case law when interpreting the comparable provisions of other federal statutes." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008).  As the *Darveau* court notes, there are "no significant differences in either the language or intent" of the Title VII and the FLSA antiretaliation provisions and that both statutes have the same "general definitions of 'employee.'"

12

Case: 19-1152     Document: 003113236565     Page: 77     Date Filed: 05/13/2019

*Id. Compare* 29 U.S.C. § 203(e)(1) (FLSA), *with* 42 U.S.C. § 2000e(f) (Title VII). This Court, agreeing with the *Darveau* court's analysis, finds that the fact that plaintiff indisputably was not an employee of PNY when PNY filed its counterclaims does not bar the retaliation claim as futile.

Defendants also argue that a counterclaim is not an adverse employment action as a matter of law. The Third Circuit and this District have yet to address this issue directly, and other federal courts are in conflict. *Compare Darveau*, 515 F.3d at 343, *and Parry v. New Dominion Const., Inc.*, Civ. A. No. 14-1115, 2015 WL 540155, at *7-8 (W.D. Pa. Feb. 10, 2015), *with Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532-33 (5th Cir. 2003), *and Gross*, 599 F. Supp. 2d at 33-34. Several courts have held that a counterclaim might be able to constitute a materially adverse action sufficient to state a retaliation claim under the FLSA, but only if the counterclaim is "baseless." *See, e.g., Jones v. Judge Tech. Servs. Inc.*, Civ. A. No. 11-6910, 2013 WL 5777159, at *7-8 (E.D. Pa. Oct. 25, 2013); *Eng-Hatcher v. Sprint Nextel Corp.*, Civ. A. No. 07-7350 (KNF), 2008 WL 4865194, at *4 (S.D.N.Y. Oct. 31, 2008); *Beltan v. Brentwood N. Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 833-35 (N.D. Ill. 2006).

The Court is unwilling to conclude, at this time, that a counterclaim could *never* be the basis for a retaliation claim under the FLSA. The FLSA's retaliation provision is quite expansive, making it unlawful to "discharge or *in any other manner discriminate* against any employee" for filing a complaint under the FLSA. 29 U.S.C. § 2159(a)(3) (emphasis added). Moreover, the *Burlington* Court made clear that in retaliation cases, an adverse employment action may "extend[] beyond workplace-related or employment-related retaliatory acts and harm." *Burlington*, 548 U.S. at 67. Counterclaims brought with a retaliatory animus could reasonably discourage current or former employees from bringing actions under the FLSA.

13

Case: 19-1152     Document: 003113236565     Page: 78     Date Filed: 05/13/2019

Nevertheless, this Court agrees with other courts holding that a counterclaim could be the basis of a retaliation claim only in rare cases where the counterclaim is brought with a retaliatory animus and is baseless. Otherwise, a plaintiff might argue that *any* counterclaim asserted in an FLSA action is retaliatory. Moreover, when the counterclaims are compulsory (as they are here), defendants must bring them or risk waiver. *See, e.g., Beltran*, 426 F. Supp. 2d at 834.

The Court is not convinced that this is one of those rare cases. Courts applying the "baseless" standard have defined baseless as akin to "frivolous (and therefore sanctionable)." *Ergo v. Int'l. Merch. Servs., Inc.*, 519 F. Supp. 2d 765, 781 (N.D. Ill. 2007); *see also Kierstead v. Suter*, 903 F. Supp. 801, 802 (D.N.J. 1995) (explaining "a complaint is frivolous" under the *in forma pauperis* statute if "it lacks an arguable basis either in law or in fact" (internal quotation marks omitted)). Even if the counterclaims ultimately lack merit, that does not mean they are "baseless." Here, although plaintiff contests the facts underlying PNY's counterclaims, he does not plead, or even argue, that they are frivolous or sanctionable. The Court further notes that when PNY first filed its counterclaims, plaintiff did not even move to dismiss them for failure to state a claim, much less contend they were frivolous.[4] Plaintiff apparently did not consider these claims substantively frivolous when they were first filed, regardless of what he argues now about PNY's motivation in bringing them. The allegations in plaintiff's PAC provide no basis to conclude that PNY's counterclaims are baseless. Therefore, the Court finds the proposed FLSA retaliation claim is futile.

---

[4]     Although plaintiff did file a motion for sanctions against defendants and their counsel pursuant to Federal Rule of Civil Procedure 11, that motion concerned defendants' representations about whether the parties actually entered into the 2014 contract. (ECF No. 54). It did not address the basis for PNY's counterclaims, which are based on plaintiff's alleged failures to develop and sell shredders and manage PNY's portable power business.

14

## **CONCLUSION**

For the foregoing reasons, it is hereby, **ORDERED** that Plaintiff's Motion to Amend the

Complaint is **GRANTED** in part and **DENIED** in part. Plaintiff shall file an Amended Complaint

consistent with this Order on or before May 1, 2017.


Dated:  April 24, 2017

Hon. Leda Dunn Wettre, U.S.M.J.


cc:  Hon. Susan D. Wigenton, U.S.D.J.

Case: 19-1152    Document: 003113236565    Page: 79    Date Filed: 05/13/2019

A 17

Case: 19-1152     Document: 003113236565     Page: 81     Date Filed: 05/13/2019

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARK BERRADA, | **Civil Action No.** |
| Plaintiff, | **16-574 (SDW) (LDW)** |
| v. | |
| GADI COHEN, PNY TECHNOLOGIES, INC., | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

### LEDA DUNN WETTRE, U.S.M.J.

Before the Court is plaintiff Mark Berrada's motion for reconsideration of that portion of the Court's Opinion and Order of April 24, 2017 Opinion & Order (ECF No. 186) that denied him leave to assert a claim for retaliation under the Fair Labor Standards Act ("FLSA") on the ground that such a claim would be futile. (ECF No. 188). He further moves in the alternative for leave to file a Second Amended Complaint ("SAC") repleading the proposed FLSA retaliation claim. Defendants Gadi Cohen and PNY Technologies ("PNY") oppose the motion in its entirety. (ECF No. 199). For the reasons set forth below, plaintiff's motion is **DENIED**.

Familiarity with the background set forth in the Court's April 24, 2017 Opinion & Order is assumed. (*See* ECF No. 186). In short, that Opinion and Order granted, over defendants' objection, plaintiff's motion to assert six new claims in this action and to assert new factual allegations. The Court denied leave to assert only a single one of the seven proposed new claims on the ground that plaintiff's proposed claim for retaliation under the FLSA would be futile.

Plaintiff now requests that the Court reconsider the denial of leave to amend as to that single claim and, if reconsideration is not granted, to have the Court in the alternative grant his

Case: 19-1152   Document: 003113236565   Page: 82   Date Filed: 05/13/2019

motion to replead an amplified version of the proposed FLSA retaliation claim. The Court adheres to its original decision, finding that plaintiff has not demonstrated any error in its initial analysis.

## DISCUSSION

The Court first addresses plaintiff's motion for reconsideration of the Court's denial of leave for him to assert an FLSA retaliation claim. Next, the Court addresses his new motion to amend, which seeks leave to assert a repleaded form of the same FLSA retaliation claim.

### I.   Plaintiff's Motion For Reconsideration

The grounds for seeking reconsideration are limited. Local Civil Rule 7.1(i) requires a party seeking reconsideration to set forth "concisely the matter or controlling decisions which the party believes" the Court "overlooked" in its decision. Reconsideration is appropriate only where the movant demonstrates "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Courts should be "loathe to [reconsider their decisions] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." *Lesende v. Borrero*, 752 F.3d 324, 339 (3d Cir. 2014) (internal quotation marks omitted).

Reconsideration is not warranted here. Plaintiff seeks to assert an FLSA retaliation claim based on defendants' assertion of compulsory counterclaims that he contends are premised on false allegations and filed with a retaliatory motive. In analyzing the viability of the proposed claim, the Court gave plaintiff the benefit of the doubt as to several legal hurdles he faced in asserting such a claim. First, the Court held that although plaintiff's employment or consulting relationship

2

Case: 19-1152     Document: 00311323665     Page: 83     Date Filed: 05/13/2019

with PNY had terminated several years before the counterclaims were asserted, the absence of an employment relationship at the time defendants filed the counterclaims did not mean as a matter of law that the counterclaims could not constitute retaliation under the FLSA. (Opinion, ECF No. 186 at 12-13). Second, the Court rejected defendants' contention that the assertion of a counterclaim could *never* be considered an adverse employment action sufficient to state a retaliation claim under the FLSA. (*Id.* at 13).

Where the Court differed with plaintiff, however, was on the issue of whether under the circumstances here plaintiff could sustain a viable FLSA retaliation claim. Noting that it would be improper to conclude that the assertion of *any* counterclaim against a former employee who had asserted an FLSA claim could be considered retaliation under the FLSA, the Court adopted the standard followed in those courts holding that only a baseless—*i.e.,* frivolous and sanctionable— counterclaim could support an FLSA retaliation claim. *See id.* at 14.

Here, plaintiff does not persuade the Court any more on his second and third attempts than he did on his first that his proposed FLSA retaliation claim is viable. The counterclaims he contends are retaliatory are *compulsory* counterclaims that defendants were required to assert or risk waiving. Therefore, it was particularly unlikely plaintiff could bring a retaliation claim based on those counterclaims. *See Ergo v. Int'l. Merch. Servs., Inc.*, 519 F. Supp. 2d 765, 780-81 (N.D. Ill. 2007) ("The filing of a compulsory counterclaim is a particularly unlikely basis for a retaliation claim for a number of reasons: the FLSA plaintiff will have already asserted his or her rights, it will not cause the plaintiff to hire a lawyer or incur significant additional expenses, and (most significantly) the Defendant must bring compulsory counterclaims or risk waiving them."). Ultimately, the Court concluded that plaintiff's allegations did not suggest that the counterclaims

were baseless.

Although plaintiff argues that the Court "overlooked" the proposed allegation that the defendants' counterclaims contain "false allegations of fact," he is incorrect. The Court explicitly acknowledged that plaintiff's allegations contested the factual allegations underlying the defendants' counterclaims, asserting that they are "false." (ECF No. 186 at 10-11, 14). *See Resorts Int'l, Inc. v. Greate Bay Hotel & Casino, Inc.*, 830 F. Supp. 826, 831 (D.N.J. 1992) ("[T]he word 'overlooked' [is] the dominant term in [Local Civil Rule 7.1]. Only dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration."). Nevertheless, the Court found that the proposed FLSA claim was futile because plaintiff never pleaded or argued, and the PAC's allegations did not suggest, that the counterclaims were baseless. Plaintiff's quibbling over how the Court should have interpreted either his allegations or the fact that he did not move to dismiss the counterclaims does not establish an error that created a "manifest injustice." These arguments amount to disagreement with the Court's reasoning, which is inappropriate on a motion for reconsideration. *See Andreyko v. Sunrise Sr. Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014) ("[A] difference of opinion with the court's decision should be dealt with through the normal appellate process.").

Essentially, plaintiff's motion for reconsideration argues that the Court should have assumed the truth of his conclusory and vehemently disputed assertion that the counterclaims are based on false facts. This is not proper given the history here, where plaintiff never moved to dismiss the counterclaims or otherwise asserted that they were frivolous when they were filed. Indeed, to conclude that plaintiff's FLSA retaliation claim is viable here would be akin to

4

Case: 19-1152     Document: 00311323656     Page: 84     Date Filed: 05/13/2019

Case: 19-1152   Document: 00311323 6565   Page: 85   Date Filed: 05/13/2019

announcing that such a claim may be asserted whenever a defendant asserts a counterclaim that plaintiff disputes in an action where the plaintiff has asserted an FLSA claim. The protective scope of a retaliation claim cannot extend this far without making the assertion of an FLSA retaliation claim itself a retaliatory tool against a former employer. Plaintiff has been granted leave to assert a host of new claims against his former employer. He should focus on concluding discovery on those claims. This proposed claim is futile.

## II.     Plaintiff's Second Motion To Amend

To the extent that plaintiff seeks yet a *third* opportunity to assert the futile FLSA retaliation claim by moving in the alternative to amend his already amended complaint, his position is without merit. Assuming *arguendo* that the Court should reach the merits of this motion, which was filed after the date for amending pleadings in the scheduling Order and without leave of Court, the proposed amendments do not alter the Court's conclusion that the proposed FLSA retaliation claim would be futile.

As discussed in the April 24 decision, a counterclaim may support a FLSA retaliation claim "in rare cases where the counterclaim is brought with a retaliatory animus and is baseless," consistent with the holdings of district courts across the country. (*See* ECF No. 186 at 13-14). Baseless is "a powerful pejorative." *Orr v. James D. Julia, Inc.*, Civ. A. No. 07-51-B-W (MJK), 2008 WL 2605569 at *16 (D. Me. June 27, 2008). Federal courts have defined baseless as akin to "frivolous (and therefore sanctionable)." *Ergo*, 519 F. Supp. 2d at 781. Still others have concluded that the filing of a counterclaim violates the FLSA's retaliation provision if it was brought with a retaliatory motive and lacks a reasonable basis in law or fact. *See Parry v. New Dominion Const., Inc.*, Civ. A. No. 17-1115 (AJS), 2015 WL 540155, at *7 (W.D. Pa. Feb. 10, 2015); *Munroe v.*

Case: 19-1152      Document: 00311323665      Page: 86      Date Filed: 05/13/2019

*PartsBase, Inc.*, Civ. A. No. 08-80431, 2008 WL 19987777, at *3 (S.D. Fla. Nov, 20, 2008).

Here, plaintiff's attempts to remedy the defects in his prior motion are unavailing. First, his challenges to the legal merit of the counterclaims in his brief, which are based on his reading of certain New Jersey state court cases, do not convince the Court that defendants' counterclaims are baseless. Indeed, and as discussed in the April 24 decision, if the counterclaims were legally baseless, plaintiff could have moved to dismiss them, which he did not opt to do. Not having done so, it is improper for him to respond to the counterclaims by asserting a new claim contending that the counterclaims constitute FLSA retaliation.

Second, plaintiff's revamped allegations that the defendants' counterclaims are factually baseless do not alter the Court's decision either. In his earlier attempt to add an FLSA retaliation claim, plaintiff's proposed Amended Complaint alleged that defendants' counterclaims "contain false allegations of fact" and the decision to file them constituted "willful" retaliation in violation of the FLSA. (Am. Compl., ECF No. 173-2, at ¶¶ 89-92). In the proposed SAC, plaintiff's proposed FLSA retaliation count is substantively unchanged: he alleges that defendants' counterclaims "contain[] material allegations of fact that lack any evidentiary support, and which Defendants either know was false or acted in reckless disregard as to whether it is true," are "factually baseless," and would not have been filed absent this lawsuit.

Indeed, the only significant difference between the two proposed complaints is that in the proposed SAC, plaintiff also inserts new proposed factual allegations that contradict several of the specific factual allegations underlying defendants' counterclaims. For example, plaintiff's proposed allegations contradict defendants' allegations that plaintiff: insisted on being characterized as a consultant and not an employee, misrepresented to defendants that he would

6

A 24

Case: 19-1152     Document: 00311323665     Page: 87     Date Filed: 05/13/2019

increase sales of accessories, promised to increase sales of products by certain amounts (but failed to do so), and failed in managing PNY's portable power business, among others. (*Compare* Am. Compl. ¶¶ 22, 89-92, *with* SAC, ECF No. 188-4, at ¶¶ 23(a)-(g), 67-72). Overall, these proposed amendments essentially paraphrase and supplement the FLSA retaliation claim that the Court already rejected as futile.

In any event, the proposed factual allegations provide no basis to conclude that defendants' counterclaims are baseless. The Court recognizes that the parties have extremely differing views of this case. Much of the evidentiary support for their respective claims appears to derive from deposition testimony. Indeed, the parties' briefs, and the record thus far, suggest that plaintiff's testimony directly contradicts that of defendant Cohen's on several points, and the parties have differing interpretations of the testimony. (*Compare* ECF Nos. 188-1 at 10-14 *with* 199 at 11-14). The mere existence of competing allegations, however, does not provide a basis to conclude that the counterclaims are "totally baseless." *Eng-Hatcher v. Sprint Nextel Corp.*, Civ. A. No. 07-7350 (BSJ) (KNF), 2006 WL 4865194, at *4 (S.D.N.Y. Oct. 31, 2008). As discussed above with respect to reconsideration, allowing plaintiff's proposed FLSA retaliation claim under such circumstances would be tantamount to holding that a retaliation claim could be brought in any FLSA case in which the defendant files compulsory counterclaims. *See Ergo*, 519 F. Supp. 2d at 780-81.

To be clear, the Court is not making any determination as whether defendants are likely to prevail on their counterclaims. Plaintiff's challenges may well have merit. His proposed FLSA retaliation claim, however, is futile because the counterclaims as alleged are not so baseless as to support such a claim, which is only appropriate in rare cases. Accordingly, plaintiff's motion to file the SAC, even if its filing had not been procedurally improper, is meritless.

A 25

Date Filed: 05/13/2019   Page: 88   Document: 003113236565   Case: 19-1152

**CONCLUSION**

For the foregoing reasons, it is hereby, **ORDERED** that Plaintiff's Motion is **DENIED**.

The Clerk's Office is respectfully directed to terminate ECF No. 188.

Dated:  December 4, 2017

*Leda Dunn Wettre*

Hon. Leda Dunn Wettre, U.S.M.J.

8

A 26

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK BERRADA, <br><br>                 Plaintiff, <br><br> v. <br><br> GADI COHEN and PNY TECHNOLOGIES, INC., <br><br>                 Defendants. | Case No. 16-cv-574 (SDW) (LDW) <br><br> **OPINION** <br><br> September 26, 2018 |

**WIGENTON**, District Judge.

Before this Court are Defendants Gadi Cohen ("Cohen") and PNY Technologies, Inc.'s ("PNY") (collectively "Defendants") Motion for Summary Judgment, brought pursuant to Federal Rule of Civil Procedure ("Rule") 56, and Plaintiff Mark Berrada's ("Plaintiff") Cross Motion to Strike Portions of Defendants' Moving Papers. This Court has jurisdiction over this action pursuant to 28 U.S.C §§ 1331 and 1367. Venue is proper pursuant to 28 U.S.C. § 1391. The motions are decided without oral argument pursuant to Rule 78. For the reasons discussed below, Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part**, and Plaintiff's Cross Motion to Strike Portions of Defendants' Moving Papers is **DENIED as moot**.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Defendant Cohen is the founder of Defendant PNY[1], a technology company that sells computer peripherals and electronics accessory products. Cohen is a resident of New Jersey, and

---

[1] Cohen has also served as the company's Chairman of the Board of Directors, President, and Chief Executive Officer.

A 27

Case: 19-1152     Document: 003113236565     Page: 90     Date Filed: 05/13/2019

PNY's principal place of business is in Parsippany, New Jersey. Plaintiff is a resident of Florida who claims to have "specialized experience and expertise . . . in [] product development and design, product packaging, manufacturing, global sourcing, supply chain, purchasing, merchandising, marketing, sales, and distribution of computer peripherals and electronics accessory products[.]" (Defs.' Statement of Material Facts ("SMF") ¶¶ 5-6, ECF No. 270-1.) "In or around August 2013, [Plaintiff] and . . . [Defendant] Cohen had discussions about [Plaintiff] potentially providing services to PNY." (*Id.* ¶ 24.) In September 2013, Plaintiff executed PNY's Mutual Confidentiality and Non-Disclosure Agreement, and shortly thereafter began working with or for Defendants. (Richter Decl. Ex. 13, ECF No. 270-9; *see also* Am. Compl. ¶ 13, ECF No. 187)

Plaintiff alleges that he entered into two contracts with Defendants, an oral one in September 2013 (the "2013 Contract") and a written one in July 2014 (the "2014 Contract"). (Am. Compl. ¶¶ 12-13, 17.) Plaintiff avers that under the 2013 Contract, he was promised:

> (i) 5% of the worldwide gross sales of all accessories (including shredders) including existing products and new products that were managed, sourced, developed, managed designed, marketed and/or sold by [Plaintiff] or under his leadership (but excluding non-shredder Hewlett Packard branded accessories) for as long as those existing and new products are sold; (ii) 25% of the gross profit from the worldwide sales of such existing and new products for so long as they are sold; (iii) $15,000.00 per month for twelve months to cover [Plaintiff's] base living and other expenses; and (iv) [Plaintiff's] travel expenses while on PNY business[.]

(*Id.* ¶ 12.) Under the 2014 Contract, "as a reward for [his] performance," Plaintiff was promoted to vice president at PNY and allegedly promised additional compensation consisting of: "(a) .5% of sales to existing customers of PNY's products; (b) 1% on sales to new customers of PNY's products; (c) [an] annual base salary of $120,000.00; and (d) fringe benefits, including medical, dental, vision, and life insurance, participation in PNY's 401(k) plan, and paid time off." (*Id.* ¶ 17.) Ultimately, PNY paid Plaintiff $15,000.00 a month for services rendered between October

Case: 19-1152     Document: 00311323565     Page: 91     Date Filed: 05/13/2019

2013 and October 15, 2014, and reimbursed his travel expenses. Plaintiff did not receive any percentage payments under the 2013 Contract or any of the compensation or benefits under the 2014 Contract.

On September 10, 2015, Plaintiff filed suit against Defendants in state court in Florida, alleging that Defendants failed to fully compensate him for services he provided to PNY. (ECF No. 1-2.) On October 13, 2015, Defendants removed the action to the United States District Court for the Southern District of Florida. (ECF No. 1.) On February 2, 2016, the case was transferred to the District Court for the District of New Jersey. (ECF Nos. 33, 88.) The parties subsequently amended their respective pleadings.[2] (ECF Nos. 187, 190.) The following claims are included in Plaintiff's eleven-count Amended Complaint: fraud (Count One), breach of 2013 Contract (Count Two), unjust enrichment as to 2013 Contract (Count Three), breach of 2014 Contract (Count Four), promissory estoppel (Count Five), unjust enrichment as to 2014 Contract (Count Six), quantum meruit (Count Seven), violations of New Jersey Wage Payment Act[3] (Count Eight), violations of the Fair Labor Standards Act ("FLSA") (Count Nine), violations of the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a1, et seq. (Count Ten), and violations of the New Jersey Independent Sales Representative Act, N.J. Stat. Ann. § 2A:61A-1, et seq.[4] (Count Eleven). (See generally Am. Compl.) Defendants asserted the following counterclaims with their Answer to the Amended Complaint: breach of oral contract (Counterclaim One), breach of implied covenant of good faith and fair dealing (Counterclaim Two), promissory estoppel (Counterclaim

---

[2] The parties have undergone protracted litigation over amendments to Plaintiff's Complaint and Defendants' Counterclaims. (See April 17, 2018 Letter Opinion and Order, ECF Nos. 287-88.) This Court assumes the parties' familiarity with the procedural history in this matter and thus will summarize only those facts relevant to the instant motion.

[3] For purposes of this Opinion, this Court will refer to N.J. Stat. Ann. § 34:11-4.1, et seq. as the New Jersey Wage Payment Law ("NJWPL").

[4] For purposes of this Opinion, this Court will refer to N.J. Stat. Ann. § 2A:61A-1, et seq. as the New Jersey Sales Representatives' Rights Act ("NJSRRA").

Case: 19-1152     Document: 00311323236565     Page: 92     Date Filed: 05/13/2019

Three), unjust enrichment (Counterclaim Four), fraudulent misrepresentation (Counterclaim Five), negligent misrepresentation (Counterclaim Six), violations of the New Jersey Trade Secrets Act ("NJTSA"), N.J. Stat. Ann. § 56:15-1, *et seq.* (Counterclaim Seven), violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.* (Counterclaim Eight), violations of New Jersey's Computer Related Offenses Act ("NJCROA"), N.J. Stat. Ann. § 2A:38A-3, *et seq.* (Counterclaim Nine), breach of contract: violation of the Confidentiality and Non-disclosure Agreement (Counterclaim Ten), and conversion (Counterclaim Eleven).  (ECF No. 190.)

On March 20, 2018, Defendants filed the instant Motion for Summary Judgment.  (ECF Nos. 269-71.)   On April 30, 2018, Plaintiff opposed and cross-moved to strike portions of Defendants' moving papers.  (ECF Nos. 290-91.)   On May 23, 2018, Defendants opposed Plaintiff's cross motion and replied in further support of their summary judgment motion.  (ECF No. 296.)

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

4

Case: 19-1152     Document: 003113236565     Page: 93     Date Filed: 05/13/2019

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001) (citing Fed. R. Civ. P. 56(e)). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

Case: 19-1152   Document: 003113236565   Page: 94   Date Filed: 05/13/2019

### III.   DISCUSSION

#### a.   Fraud (Count One)

Under New Jersey law, to establish a claim for fraud a plaintiff must allege: "(1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367-68 (N.J. 1997)); *see also Churchill Downs, Inc. v. NLR Entm't, LLC*, No. 14-3342, 2017 WL 899927, at *11 (D.N.J. Mar. 6, 2017).   In the context of fraudulent inducement, the first element may be satisfied if the promisor knows at the time he makes the promise that he has no intention of fulfilling it.   *Luscko v. S. Container Corp.*, 408 F. App'x 631, 634 (3d Cir. 2010) (citations omitted); *Re: Refine Tech., LLC v. MCC Dev., Inc.*, No. 17-5548, 2018 WL 3159874, at *3 (D.N.J. Feb. 21, 2018).   A promisor's intent can be gleaned from circumstantial evidence, such as

> utter recklessness and implausibility of the statement in light of subsequent acts and events, a showing that the promisor's intention to perform was dependent upon contingencies only known to him, or evidence showing at the time of the promise that the promisor could not or would not fulfill the promise.

*Luscko*, 408 F. App'x at 634-35 (citing *Ocean Cape Hotel Corp. v. Masefield Corp.*, 164 A.2d 607, 613 (N.J. Super. Ct. App. Div. 1960)).   However, "[m]ere nonperformance of a promise is insufficient to show that a promisor had the requisite intent not to perform." *Id.* at 635 (citing *Notch View Assocs. v. Smith*, 615 A.2d 676, 682 (N.J. Super. Ct. Law Div. 1992)).

Here, Plaintiff alleges that Defendants "made numerous misrepresentations . . . to induce [Plaintiff] to join PNY, either knowing they were false or in reckless disregard as to whether they were false[.]"  (Am. Compl. ¶ 21.)  Notwithstanding the parties' disputes as to what promises Defendants made, Plaintiff has not presented any evidence to suggest that Defendants did not

6

Case: 19-1152    Document: 00311323656565    Page: 95    Date Filed: 05/13/2019

intend to fulfill those promises. Additionally, "statements that can be categorized as 'puffery' or 'vague and ill defined opinions' are not assurances of fact and thus do not constitute misrepresentations." *Fimbel v. Fimbel Door Corp.*, No. 14-1915, 2014 WL 6992004, at *4 (D.N.J. Dec. 10, 2014) (quoting *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998)). Thus, allegations that Plaintiff was promised that he "would make more money working for [Defendants] in the long run . . . because they were entering into a long-term agreement[,]" (Am. Compl. ¶ 21), are inactionable because they were opinions of future events rather than misrepresentations of fact.

Moreover, under the economic loss doctrine, a plaintiff is prohibited from "recovering in tort economic losses to which [his] entitlement only flows from contract." *Turbulent Diffusion Tech. Inc. v. Amec Foster Wheeler N. Am. Corp.*, No. 15-7105, 2017 WL 1752951, at *2 (D.N.J. May 4, 2017) (internal quotation marks omitted) (quoting *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002)). Here, Plaintiff's fraud claim alleges, in part, that he was promised certain percentage payments under the 2013 Contract, and that he reasonably relied on those representations "to his detriment, by . . . remaining employed by Defendants[.]" (Am. Compl. ¶¶ 21-22.) The economic loss doctrine bars Plaintiff's fraud claim to the extent that it is not separate and distinct from his claim that Defendants breached the 2013 Contract. For all the foregoing reasons, Defendants' motion is granted as to Plaintiff's fraud claim under Count One.

b. Breach of Contract (Counts Two and Four)

To state a claim for breach of contract in New Jersey, Plaintiff must allege: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico*, 507 F.3d at 203.

Case: 19-1152   Document: 003113236565   Page: 96   Date Filed: 05/13/2019

### i. *2013 Contract*

Here, the parties dispute whether the 2013 Contract included confidential percentage payments of PNY's worldwide sales and profits. (Pl.'s Statement of Disputed Material Facts ("Pl.'s Disputed Facts") ¶ 18, ECF No. 291-2.) This Court notes that over the course of litigation, Plaintiff has modified the terms of the 2013 Contract as they relate to the percentage payments. The Complaint initially alleged that he was entitled to: "5% of the sales proceeds of Accessories including new products that were sourced, developed and/or managed by [Plaintiff] (but excluding Hewlett Packard brand accessories); [and] 25% of the gross profit from the worldwide sales of such products[.]" (Compl. ¶ 13, ECF No. 1-2.) The terms were expanded in the Amended Complaint to:

> 5% of the *worldwide gross sales* of all accessories *(including shredders) including existing products* and new products that were managed, sourced, developed, managed [sic] designed, marketed and/or sold by [Plaintiff] *or under his leadership (but excluding non-shredder Hewlett Packard branded accessories) for as long as those existing and new products are sold*; [and] 25% of the gross profit from the worldwide sales of such *existing and new products for so long as they are sold*[.]

(Am. Compl. ¶ 12 (emphasis added).)

Other than Plaintiff's self-serving testimony, there is no evidence that the percentage payments were part of the 2013 Contract.[5] *See Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) ("As a general proposition, 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'" (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)); *see, e.g., Soto v. Trella*, No. 03-1098, 2007 WL 4355463, at *2 (D.N.J. Dec. 10, 2007) (awarding summary judgment to defendants where

---

[5] Plaintiff's allegation that Cohen made personal assurances that he would compensate Plaintiff if PNY failed to do so suffers from the same deficiency.

Date Filed: 05/13/2019   Page: 97   Document: 003113236565   Case: 19-1152

there was no "eyewitness account, corroborating documentation or other supporting evidence" and the plaintiff had "only his own self-serving testimony").

"[T]he summary judgment standard does not denote what a fact-finder may find upon delusion, but rather what a *reasonable* fact-finder could conclude from the evidence presented." *Mumtaz v. Etihad Airways & Airlines*, No. 12-2051, 2014 WL 7405216, at *5 (D.N.J. Dec. 30, 2014). "To allow unreasonable inferences to be drawn from Plaintiff, this Court would be drastically limiting the possibility that summary judgment could ever be granted because virtually any contrary testimony by a plaintiff would preclude a grant of summary judgment to the defendants." *Id.* at *6 (citing *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 (3d Cir. 1999)). Although this Court gives the nonmoving party the benefit of all *reasonable* inferences in deciding a summary judgment motion, here, Plaintiff is asking this Court to make unreasonable inferences regarding the 2013 Contract. Because Plaintiff is unable to establish that Defendants agreed to issue the alleged percentage payments as part of the 2013 Contract, Defendants' motion is granted as to the breach of contract claim in Count Two.

### ii. *2014 Contract*

As discussed above, to maintain a breach of contract claim, Plaintiff must be able to establish that there was a contract. "[A] contract arises from offer and acceptance, and must be sufficiently definite so that the performance to be rendered by each party can be ascertained with reasonable certainty." *Lacroce v. M. Fortuna Roofing, Inc.*, No. 14-7329, 2017 WL 431768, at *5 (D.N.J. Jan. 31, 2017) (citing *Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004)); *see also Cotter v. Newark Hous. Auth.*, 422 F. App'x 95, 98 (3d Cir. 2011). As such, courts require "a 'meeting of the minds,' as evidenced by each side's express agreement to every term of the contract." *State v. Ernst & Young, L.L.P.*, 902 A.2d 338, 345 (N.J. Super. Ct. App. Div. 2006) (citation omitted); *see Newfield Fire Co. No. 1 v. Borough of Newfield*, 107 A.3d 686, 693 (N.J. Super. Ct. App. Div.

2015) (same). "Where the parties do not agree to one or more essential terms, . . . courts generally hold that the agreement is unenforceable." *Weichert Co. Realtors*, 608 A.2d at 284.

Here, Plaintiff received a formal, written offer of employment on July 16, 2014. (Defs.' SMF ¶¶ 94-95; Pl.'s Resp. to Defs.' SMF ¶¶ 94-95, ECF No. 291-1.) Plaintiff alleges that on the very same day, he crossed out certain terms from the 2014 Contract and returned a signed copy to PNY's Director of Human Resources. (Pl.'s Resp. to Defs.' SMF ¶ 97; *but see* Defs.' SMF ¶ 96.) Specifically, Plaintiff avers that he struck the following provisions from the 2014 Contract:

> Commissions can be reviewed and changed as deemed necessary by PNY. . . . This letter contains all of the terms of the offer of employment given to you by PNY . . . and supersedes any other representations or offers made to you in connection with your employment. Nothing in this letter shall be construed as a contract of employment or a promise of employment for any particular length of time. In accordance with PNY's policy, your employment relationship with PNY Technologies, Inc. shall be employment at will. This means that you are free to resign or leave employment at any time for any reason. Likewise, your employment may be terminated by PNY at any time, with or without notice, for any reason.

(Nirenberg Decl. Ex. U at 1-2, ECF No. 291-25.) Though Defendants dispute whether Plaintiff returned the 2014 Contract in this manner, assuming Plaintiff's factual allegations to be true, when he crossed out the above terms, he was rejecting PNY's offer and making a counteroffer. *See Kamden v. Lieblich*, No. L-9310-03, 2005 WL 2806227, at *3 (N.J. Super. Ct. App. Div. Oct. 28, 2005) ("It is an elementary tenet of contract law that an offeree's counteroffer serves as a rejection of the original offer[.]").[6] Because the offer set forth in the 2014 Contract was not met with valid

---

[6] Plaintiff's argument that the 2014 Contract is enforceable because he only struck immaterial terms from the offer is not persuasive. (*See* Pl.'s Br. at 14, ECF No. 291.) The language Plaintiff removed from the contract concerns the very same issues being litigated in this case, such as whether the compensation outlined in the 2014 Contract would supplement or supersede the 2013 Contract. Thus, even viewing the facts in the light most favorable to Plaintiff, this Court "cannot find a contract that is distinct and definitive enough to be enforceable." *Baer*, 392 F.3d at 621.

Case: 19-1152   Document: 003113236565   Page: 98   Date Filed: 05/13/2019

acceptance, there could be no resultant breach. Therefore, Defendants' motion is granted as to Plaintiff's breach of contract claim under Count Four.

### c. Quasi-Contract Claims (Counts Three, Five, Six, and Seven)

Under New Jersey law, "[q]uasi-contract liability will not be imposed . . . if an express contract exists concerning the identical subject matter. The parties are bound by their agreement, and there is no ground for implying a promise as long as a valid unrescinded contract governs the rights of the parties." *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983); *see also Freightmaster USA, LLC v. Fedex, Inc.*, No. 14-3229, 2015 WL 1472665, at *6 (D.N.J. Mar. 31, 2015). Here, in the alternative to his breach of contract claims, Plaintiff has pled quasi-contract theories of relief (i.e., unjust enrichment, promissory estoppel, and quantum meruit). However, because the 2013 Contract is a valid oral agreement that squarely addresses Plaintiff's compensation during the relevant time period, including in 2014, this Court need not reach Plaintiff's quasi-contract claims. *See, e.g., Hillsborough Rare Coins, LLC v. ADT LLC*, No. 16-916, 2017 WL 1731695, at *6 (D.N.J. May 2, 2017) (explaining that relief under the quasi-contract theories of unjust enrichment and promissory estoppel are not available when a valid contract exists); *N.Y.-Conn. Dev. Corp. v. Blinds-To-Go (U.S.) Inc.*, 159 A.3d 892, 901-02 (N.J. Super. Ct. App. Div. 2017) (explaining that once a jury finds that there was an enforceable contract, the plaintiff would not have been entitled to recover damages under the quasi-contract theory of quantum meruit). Therefore, Plaintiff's quasi-contract claims in Counts Three, Five, Six, and Seven are dismissed as moot.

### d. Wage Claims (Counts Eight, Nine, Ten, Eleven)

#### i. *NJWPL & NJSRRA*

The NJWPL "is designed to protect an employee's wages and to assure timely and predictable payment." *Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 463 (N.J. 2015); *see also* N.J.

Case: 19-1152   Document: 00311323 6565   Page: 99   Date Filed: 05/13/2019

Case: 19-1152   Document: 00311323236565   Page: 100   Date Filed: 05/13/2019

Stat. Ann. § 34:11-4.2 (addressing time and mode of payment, and paydays). Analogously, the NJSRRA requires principals to pay their sales representatives any earned commissions and compensation within thirty days of the termination of a contractual relationship or thirty days of the date commissions are due. N.J. Stat. Ann. § 2A:61A-2. Plaintiff alleges that he is owed wages under the NJWPL, or alternatively, commissions under the NJSRRA. In sum, Plaintiff is seeking the percentage payments under the 2013 and 2014 Contracts, and his $120,000.00 base salary under the 2014 Contract. As discussed above, there is no evidence to suggest that percentage payments were part of the 2013 Contract or that the parties consummated the 2014 Contract. Therefore, Defendants' motion is granted as to Plaintiff's NJWPL and NJSRRA claims in Counts Eight and Eleven.

### ii.  FLSA & NJWHL

The FLSA established *inter alia* overtime requirements for employees in furtherance of Congress's objectives to eliminate "conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers[.]" 29 U.S.C. § 202; 29 U.S.C. § 207 (requiring employers to pay employees that work more than forty hours per week "a rate not less than one and one-half times the regular rate at which he is employed"). The NJWHL established a similar statutory scheme in New Jersey. N.J. Stat. Ann. § 34:11-56a4 (addressing minimum rates, overtime rates, and exceptions thereto). However, these federal and state provisions do not apply to highly-compensated employees: (1) who receive a "total annual compensation of at least the annualized earnings amount of the 90th percentile of full-time nonhourly workers nationally;"[7] and (2) who "customarily and regularly perform[] any one or more of the exempt duties or responsibilities of an executive, administrative or professional

---

[7] As of December 1, 2016, the exemption applies to employees that receive "total annual compensation of at least $134,004." 29 C.F.R. § 541.601(b).

Case: 19-1152    Document: 003113236565    Page: 101    Date Filed: 05/13/2019

employee[.]"[8]   29 C.F.R. § 541.601(a); *see also* N.J. Admin. Code § 12:56-7.2(a) (adopting by reference federal provisions under 29 C.F.R. Part 541).  Exemptions to the FLSA or NJWHL are "narrowly construed against the employer, and the employer has the burden of establishing an exemption." *Pignataro v. Port Auth.*, 593 F.3d 265, 268 (3d Cir. 2010); *see also In re Raymour & Flanigan Furniture*, 964 A.2d 830, 836 (N.J. Super. Ct. App. Div. 2009) (citations omitted).

Here, Plaintiff alleges that he was entitled to, but failed to receive, overtime wages as required under the FLSA and NJWHL.  Even assuming that Plaintiff was an employee rather than an independent contractor, the undisputed facts demonstrate that he was exempt from receiving overtime wages as a highly-compensated executive.[9]  He satisfies the first prong of the exemption because he was paid $15,000.00 per month, which equates to $180,000.00 per year.  (Defs.' SMF ¶ 38.)  With regard to the second prong, the FLSA's regulations define executives in part as those employees "[w]ho customarily and regularly direct[] the work of two or more other employees[.]" 29 C.F.R. § 541.100(a)(3).  While working for PNY, Plaintiff headed a team of at least four individuals.  (Defs.' SMF ¶ 79.)  Plaintiff's high compensation and performance of "any one or more of the exempt duties or responsibilities of an executive" is sufficient to classify him as a highly-compensated executive employee who is exempt from overtime pay.  *See* 29 C.F.R. § 541.601(c) (explaining that "[a] high level of compensation is a strong indicator of an employee's

---

[8] The exemption only applies to an employee whose "primary dut[ies] include[] performing office or non-manual work." 29 C.F.R. § 541.601(d).  It is undisputed that Plaintiff's duties involved office or non-manual work.

[9] Defendants admit that they did not plead this exemption as an affirmative defense. (Defs.' Reply Br. at 7, ECF No. 296.)  However, as courts have explained, "the technical failure to plead an FLSA exemption defense explicitly in the pleadings is not fatal to the employer's ability to assert it in the litigation and have the Court reach the merits of the defense." *Antiskay v. Contemporary Graphics & Bindery Inc.*, No. 11-7579, 2013 WL 6858950, at *5-6 (D.N.J. Dec. 26, 2013).  This is particularly the case where the plaintiff does not suffer from surprise or undue prejudice. *See id.* at *5 (citing *In re Sterten*, 546 F.3d 278, 285 (3d Cir. 2008)).  Here, Defendants have repeatedly indicated their position during the discovery phase that Plaintiff was a consultant rather than an employee of PNY under the FLSA and NJWHL, and that even if he was an employee, he was exempt from overtime wages. (*See* Richter Decl. Ex. 9 at ¶¶ 18-19, ECF No. 270-5; Richter Decl. Ex. 72 at ¶¶ 87, 90-93, ECF No. 269-28; Richter Suppl. Decl. Exs. 95-100, ECF Nos. 296-8 to -13.)  As such, this Court finds that the exemption defense was not waived, and Defendants' Answer is deemed amended to include such a defense.

Case: 19-1152     Document: 00311323 6565     Page: 102     Date Filed: 05/13/2019

exempt status, thus eliminating the need for a detailed analysis of the employee's job duties").
Based on the foregoing, Defendants' motion is granted as to Plaintiff's FLSA and NJWHL claims
in Counts Nine and Ten.

### e.   Defendants' Counterclaims

#### i.   *2013 Contract (Counterclaims One, Two, Three, and Four)*

As discussed above, the terms of the 2013 Contract were never reduced to writing and are
heavily disputed.  In contrast to the dispute over percentage payments, the parties have created
genuine issues of material fact as to the scope of Plaintiff's duties and responsibilities under the
2013 Contract and the sufficiency of his efforts to develop, market, and sell products for PNY.
*See Interlink Grp. Corp. USA, Inc. v. Am. Trade & Fin. Corp.*, No. 12-6179, 2014 WL 3578748,
at *9 (D.N.J. July 18, 2014) ("[E]ven if the parties had agreed on a basic type of employment, in
most circumstances the reasonableness of Defendants' conduct is . . . a question of fact[.]").
Without knowing the precise terms of their agreement, this Court cannot assess whether Plaintiff
fulfilled his obligations when he introduced at least one shredder manufacturer to Defendants. (*See*
Pl.'s Resp. to Defs.' SMF ¶ 70.)  Therefore, summary judgment is denied as to Defendants'
counterclaims that Plaintiff breached the 2013 Contract (Counterclaim One), that he violated the
implied covenant of good faith and fair dealing in relation to the contract (Counterclaim Two), and
that he is alternatively liable under the quasi-contract theories of promissory estoppel and unjust
enrichment (Counterclaims Three and Four).

#### ii.   *Fraudulent and Negligent Misrepresentation (Counterclaims Five and Six)*

"Under New Jersey law, the elements required to establish . . . common law fraud,
fraudulent misrepresentation, and fraudulent inducement are identical[.]" *Greenskies Renewable
Energy, LLC v. Arch Ins. Co.*, No. 16-5243, 2017 WL 4023287, at *4 (D.N.J. Sept. 13, 2017)

14

Date Filed: 05/13/2019      Page: 103      Document: 00311323236565      Case: 19-1152

(citations omitted). Similarly, to successfully assert a claim of negligent misrepresentation, Defendants must demonstrate that Plaintiff "negligently made an incorrect statement of a past or existing fact, that . . . [Defendants] justifiably relied on it and that [their] reliance caused a loss or injury." *Masone v. Levine*, 887 A.2d 1191, 1195 (N.J. Super. Ct. App. Div. 2005). In the instant matter, there are questions of fact as to whether Plaintiff made any material misrepresentations or incorrect statements that would have induced Defendants to enter into the 2013 Contract. Therefore, summary judgment is denied as to Defendants' counterclaims of fraudulent misrepresentation (Counterclaim Five) and negligent misrepresentation (Counterclaim Six).

> iii. *Violations of NJTSA, CFAA, and NJCROA; Breach of Confidentiality and Non-Disclosure Agreement; and Conversion (Counterclaims Seven through Eleven)*

Defendants' remaining counterclaims relate to Plaintiff's actions in forwarding his PNY e-mails to his personal e-mail account and downloading them to a USB drive. (Defs.' SMF ¶¶ 161-71.) Summary judgment is not appropriate at this time because there are issues of fact as to whether Plaintiff improperly acquired his PNY e-mails. (*Compare id.* ¶ 166 *with* Pl.'s Resp. to Defs.' SMF ¶ 166.) Furthermore, Defendants admittedly "do not know if [Plaintiff] saved the PNY emails and information he downloaded, if he sent it to competitors, or if he used it for his business purposes or any other reason." (Defs.' SMF ¶ 183.) Their inability to ascertain this information is in part because Plaintiff has since disposed of his personal laptop and cellular phone. (*Id.* ¶¶ 179, 180, 182.)[10] Thus, summary judgment is denied as to Defendants' counterclaims that Plaintiff violated the NJTSA, CFAA, and NJCROA (Counterclaims Seven, Eight, and Nine),

---

[10] Although Plaintiff's actions are not proof of wrongdoing, Defendants may request an adverse-inference jury instruction at trial. *See, e.g., Durst v. FedEx Express*, No. 03-5186, 2006 WL 1541027 (D.N.J. June 2, 2006).

15

A 41

Case: 19-1152     Document: 00311323565     Page: 104     Date Filed: 05/13/2019

breached the Confidentiality and Non-Disclosure Agreement (Counterclaim Ten), and converted Defendants' e-mails (Counterclaim Eleven).[11]

    f.  <u>Plaintiff's Cross Motion to Strike</u>

Plaintiff cross moves to strike certain paragraphs from Defendants' Rule 56.1 Statement and exhibits to Defendants' motion based on inadmissibility. Pursuant to Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). This Court notes Plaintiff's objections and finds that, without more, striking Defendants' exhibits and statements is unnecessary. Furthermore, because this Court does not rely on the complained-of statements or attachments to reach any conclusions, the Cross Motion to Strike is denied as moot.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part**, and Plaintiff's Cross Motion to Strike Portions of Defendants' Moving Papers is **DENIED as moot**. An appropriate Order follows.

               *s/ Susan D. Wigenton*
               **SUSAN D. WIGENTON**
               **UNITED STATES DISTRICT JUDGE**

Orig:     Clerk
cc:       Hon. Leda D. Wettre U.S.M.J.
          Parties

---

[11] The parties also dispute whether Plaintiff returned his PNY-issued laptop to Defendants. (*Compare* Defs.' SMF ¶ 181 *with* Pl.'s Resp. to Defs.' SMF ¶ 181.) Although Defendants mention a separate claim for conversion in their brief as it relates to the PNY laptop, (Defs.' Reply Br. at 14 n.19), this Court notes that no such cause of action was included in their Counterclaims.

Case: 19-1152     Document: 00311323256565     Page: 105     Date Filed: 05/13/2019

<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MARK BERRADA,<br><br>            Plaintiff,<br><br>v.<br><br>GADI COHEN and PNY TECHNOLOGIES,<br>INC.,<br><br>            Defendants. | Case No. 16-cv-574 (SDW) (LDW)<br><br>**ORDER**<br><br>September 26, 2018 |

**WIGENTON**, District Judge.

This matter, having come before the Court on Defendants Gadi Cohen ("Cohen") and PNY Technologies, Inc.'s ("PNY") (collectively "Defendants") Motion for Summary Judgment, brought pursuant to Federal Rule of Civil Procedure 56, and Plaintiff Mark Berrada's ("Plaintiff") Cross Motion to Strike Portions of Defendants' Moving Papers, and this Court having considered the parties' submissions, for the reasons stated in this Court's Opinion dated September 26, 2018,

**IT IS** on this 26th day of September, 2018,

**ORDERED** that Defendants' Motion for Summary Judgment (ECF Nos. 269-71) is **GRANTED** as to all of Plaintiff's claims and **DENIED** as to all of Defendants' counterclaims; and it is further

**ORDERED** that Plaintiff's Cross Motion to Strike Portions of Defendants' Moving Papers (ECF Nos. 290-91) is **DENIED as moot**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:  Clerk
cc:   Hon. Leda D. Wettre U.S.M.J.
    Parties

Case: 19-1152  Document: 003113236565  Page: 106  Date Filed: 05/13/2019

2

A 44

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700
James S. Richter

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ─────────────────────────── x | |
| MARK BERRADA, | Honorable Susan D. Wigenton, U.S.D.J. |
| Plaintiff, | Civil Action No. 16 CV 574 (SDW) (LDW) |
| v. | |
| GADI COHEN and PNY TECHNOLOGIES, INC., a Delaware corporation, | **STIPULATION OF DISMISSAL WITH PREJUDICE** |
| Defendants. | |
| ─────────────────────────── x | |

Pursuant to Rule 41 of the Federal Rules of Civil Procedure, Defendants Gadi Cohen and

PNY Technologies, Inc., (collectively "Defendants"), and Plaintiff Mark Berrada hereby stipulate

to the dismissal of all of Defendants' Counterclaims in this action with prejudice, with each Party

to bear its own costs, expenses and attorneys' fees.

The parties further agree and stipulate that notwithstanding the dismissal of Defendants'

Counterclaims, Plaintiff may still appeal the Order granting Defendants' Motion for Summary

Judgment on Plaintiff's claims and all of Defendants' affirmative defenses to such claims which

may be appealed are hereby preserved.

**A 44A**

Dated: December 20, 2018

**WINSTON & STRAWN LLP**

By:  s/ James S. Richter
    James S. Richter
    WINSTON & STRAWN LLP
    200 Park Avenue
    New York, New York 10166
    Tel: (212) 294-6700
    Fax: (212) 294-4700
    jrichter@winston.com

*Attorneys for Defendants Gadi Cohen and*
*PNY Technologies, Inc.*

Dated: December 20, 2018

**RABNER BAUMGART BEN-ASHER &**
**NIRENBERG, P.C.**

By: /s Jonathan I. Nirenberg
    Jonathan I. Nirenberg
    52 Upper Montclair Plaza
    Upper Montclair, New Jersey 07043
    Telephone: (973) 744-4000

*Attorneys for Plaintiff Mark Berrada*

IT IS SO ORDERED this 20th day of December, 2018.

Honorable Susan D. Wigenton, U.S.D.J.

2

**A 44B**